### AMERICAN FRUIT GROWERS, Inc., v. MICHIGAN FRUIT GROWERS, Inc.

### Patent Appeal No. 2248.

Court of Customs and Patent Appeals.
March 19, 1930.

R. T. M. McCready, of Pittsburgh, Pa. (Chas. R. Allen, of Washington, D. C., of counsel), for appellant.

James Atkins, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal, in a trade-mark opposition proceeding, from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences dismissing the opposition of appellant and adjudging appellee entitled to the registration of a composite trade-mark, Serial No. 218,-983, consisting of the word "Michigander"

and representations of two or three kinds of fruit inclosed within a double circle, together with an "outline tracing of the lower peninsula of Michigan, and the representation of a goose in white" upon a black and white background, for use on fresh and canned fruits.

Appellant's trade-mark consists of the words "Blue Goose," appearing immediately above the representation of a "blue goose" inclosed within a double circle. This mark was registered on January 13, 1920. It has been used by appellant and its predecessor throughout the United States and many foreign countries since May, 1918, on fresh fruits and vegetables, and has become associated in the public mind with the highest quality of these commodities. Appellant has sold its products and advertised its mark extensively in every state in the United States, including the state of Michigan. Its trademark appears on packages in which its fruits and vegetables are contained, as well as on the skins of citrus fruits. As illustrative of the extent to which the mark of appellant is used, more than five million blue goose labels were used in 1925 on packages containing its products, and more than ninety-one million "pieces of citrus fruits" were printed with this label. During the same year appellant sold more than thirty-eight thousand carloads of fruits and vegetables for the sum of approximately $40,000,000. Large sums of money have been expended in advertising the mark in the newspapers, on posters, painted signs, in trade papers, magazines, in advertising matter to the growers of fruit, moving signs, etc.

It appears that appellee's application for registration of its mark was filed August 19, 1925. No evidence was submitted by appellee.

On March 5, 1927, the Examiner of Interferences held that, "An inspection of the marks used by the parties makes it seem reasonably probable that confusion in trade would be likely," and, accordingly, that appellee was not entitled to have its mark registered.

On July 9, 1927, the Examiner of Interferences set aside his previous decision, dismissed the opposition, and held that appellee was entitled to have its mark registered for the following reasons:

"This is an opposition which comes to final hearing before the examiner for the second time. The situation is now different by reason of an amendment of the answer. In this amendment the defense of the use of marks by third parties is made. The evidence of this use is wholly statutory and is afforded by registrations, profert of which has been made by means of soft copies.

"The defense relied upon is substantially the same as that which was employed in the cases of Goodall Worsted Co. v. Palm Knitting Co., Inc., 56 App. D. C. 148, 10 F.(2d) 1013, 352 O. G. 535; Booth Fisheries Co. v. Adams & Sons Grocer Co., 56 App. D. C. 142, 10 F.(2d) 1007, 350 O. G. 469. In effect, this defense is that the representation of a goose is less fanciful and arbitrary than it prima facie appears to be from mere inspection of the mark used by the opposer. Of the registrations relied upon, perhaps Registration No. 97,009, issued May 12, 1914, will serve as an example. It discloses the notation 'Gray Goose,' accompanied by the representation of a goose, and is used on canned fruits and canned vegetables. It seems to the examiner that this defense is well founded in view of the rulings in the cases just cited and the statutory evidence afforded by these registrations."

On appeal, it was held by the Commissioner of Patents that, although the registration of appellee's mark would probably cause confusion in the trade, nevertheless, in view of prior registrations and particularly registration No. 97,009, issued May 12, 1914, of the words "Gray Goose" accompanied by the representation of a goose for use on canned fruits and canned vegetables, appellee was entitled to have its mark registered. In explanation of this holding, the Commissioner said: "Some of the above noted registrations were issued long prior to the earliest date of adoption and use claimed by opposer. It would appear, in consequence, that opposer was not the first to adopt and use the representation of a goose upon goods of this class and it also appears that the applicant's particular representation of the goose more nearly resembles that disclosed in registration No. 97,009 than it does the representation of a blue goose adopted and used by the opposer. Under these conditions, and following the practice announced in Goodall Worsted Co. v. Palm Knitting Co., Inc., 56 App. D. C. 148, 10 F.(2d) 1013, 352 O. G. 535, and Booth Fisheries Co. v. Adams & Sons Grocer Co., 56 App. D. C. 142, 10 F. (2d) 1007, 350 O. G. 469, *the opposer must be deemed restricted in its protection to such distinguishing features of its mark as are not found in prior registered marks used upon the same class of goods. Applying this test,*

*it would seem the applicant's representation of a goose in no way infringes the particular representation adopted by opposer. Except as to the representation of the goose, the applicant's mark is quite dissimilar to that of the opposer."* (Italics ours.)

In the case of Booth Fisheries Co. v. Adams & Sons Grocer Co., 56 App. D. C. 142, 10 F.(2d) 1007, 1008, the court had under consideration the opposition of appellant, owner of the registered trade-mark "Black Diamond" and a diamond-shaped figure, to the registration by appellee of the mark "Diamond A," "associated with the representation of a diamond inclosing a large capital 'A.'" The goods of the respective parties were of the same descriptive properties. In holding that appellant was not entitled to the exclusive use of the figure of a diamond, or the word "Diamond," or both, the court said:

"There is no dispute that the goods of the respective parties are of the same descriptive properties. It appears that the Patent Office, both before and after adoption of the mark 'Black Diamond' by appellant, registered the word 'Diamond' in varying forms to many different parties, and to several for use upon goods of the same descriptive properties as those of appellant. Appellant, therefore, was not the originator of the diamond as a trade-mark for canned food products, and is not entitled to the exclusive use of that word or representation. Alaska Packers' Ass'n v. Admiralty Trading Co., 43 App. D. C. 198; Alaska Packers' Ass'n v. Getz Bros. & Co., 49 App. D. C. 55, 258 F. 527. See, also, Am. Steel Foundries v. Robertson et al., 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317, decided in the Supreme Court of the United States January 4, 1926. On this point the Assistant Commissioner said:

" 'It seems to be fairly justifiable to hold that a diamond shape had been used to a considerable degree upon goods of this same general class before the opposer entered the field. Each of those who followed the first user of a diamond shape is only entitled to such distinctive features as he adds to his figure.'

"A different conclusion would result in the granting to appellant of a monopoly in the use of the word 'Diamond' and representation of it, to which appellant is not entitled. *We agree with the Patent Office that the difference between the two marks is such as to entitle appellee to the registration of its mark."* (Italics ours.)

In the case of Alaska Packers Association v. Admiralty Trading Co., 43 App. D. C. 198, cited in the Booth Fisheries Co., Case, supra, appellee had applied for the registration of a mark consisting of the "representation of a flag 'having a blue background with a horizontally arranged white stripe with three white stars, together with the red monogram "A. T. Co.," ' '"' for use on canned salmon. It appeared that the opposer, appellant, had used several different flags as trade-marks on goods identical in character. In disposing of the case, the court said, in part: "Since appellant has itself used the several different flags above described, in the sale of different brands of its goods, *it is hardly in a position here to contend that the mark of the applicant will be likely to cause confusion in trade, since that mark differs from each of its marks as much as they differ from one another. In other words, having sold these different brands of salmon under as many different flags, appellant is here estopped to contend that it will be damaged by the registration of applicant's mark,* and, having no standing to be heard, its petition was rightly dismissed." (Italics ours.)

In the case of Goodall Worsted Co. v. Palm Knitting Co., Inc., 56 App. D. C. 148, 10 F.(2d) 1013, the court held that, as a mark consisting of the words "Palm Island" and a representation of a palm tree had been used and registered long prior to appellant's use and registration of the words "Palm Beach," appellant was not entitled, in view of the fact that it was not the originator of the word "Palm," nor of the representation of a palm tree, in a trade-mark, to the exclusive use of such word or representation; and that appellee was entitled to the registration of its mark consisting of the words "Palm-Knit" accompanied by a representation of a palm tree in a rectangle, for use on goods possessing the same descriptive properties as those on which appellant's mark was used. In concluding its opinion, the court said:

" '* * * Both these features, the word "Palm" and the representation of a tree, were used prior to opposer's adoption and use of its mark, and these are the only features which are common to the mark of the applicant and that of the opposer.'

"As the Patent Office found, 'Palm-Knit' differs from 'Palm Beach' more than 'Palm Beach' differs from 'Palm Island.' "

Section 5 of the Trade-Mark act of February 20, 1905 (15 USCA § 85), provides, in part, as follows:

"Sec. 5. That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark— * * * Provided, That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered. * * * "

Without attempting to distinguish the decisions in the cases hereinbefore referred to, it is plain that they must be considered in the light of the quoted statutory provisions. In none of those cases were the involved trade-marks identical.

Considering the provisions of the second clause of the quoted proviso, together with the apparent lack of similarity of the involved marks and the language of the court, it is evident that those decisions were based upon the theory that the registrations of the respective marks would not be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

It appears in the case at bar that appellee seeks to register its mark for use on fresh and canned fruits. Appellant's mark is used on fresh fruits and vegetables. So far as we are aware, appellant was entitled to the registration of its mark for use on its products. If it was not, its mark ought not to have been registered; if it was inadvertently registered, those injured by such registration have a statutory remedy—application for cancellation. Appellee, however, is not injured by the registration of appellant's mark, and, while it may be that appellant is not the originator of a representation of a goose for use in a trade-mark, neither is appellee. Can it be said then that appellant is so narrowly restricted in the use of its mark that it is not entitled to the protection afforded by the statute? We think not. Accordingly, the goods of the parties possessing the same descriptive properties, the sole question for determination is whether the mark of appellee is confusingly similar to that of appellant. If it is, registration ought to be denied. If it is not, registration ought to be granted.

One of the dominant features of appellant's mark is the representation of a goose. The representation, blue in color, usually appears on a white, but sometimes on an orange, background, and is accompanied by the words "Blue Goose." The mark of appellee includes the word "Michigander," representations of two or three kinds of fruit, and an "outline tracing of the lower peninsula of Michigan," upon which appears the representation of a white goose—the dominant feature of the composite mark. The other so-called features of the mark, with the exception of the word "Michigander," are indistinct and can be recognized only by careful scrutiny. Why this is so can only be conjectured. The word "Michigander" does not resemble, in appearance or in sound, the words "Blue Goose." This is not true, however, as to meaning.

We are of opinion that the dominant characteristics of appellee's mark are not sufficiently distinguishable from the mark of appellant; that the marks are confusingly similar; and that to permit the registration of appellee's mark would cause what the statute was intended to prevent—confusion, mistake, and deceit.

For the reasons stated, the decision is reversed.

Reversed.