## CELANESE CORPORATION OF AMERICA v. VANITY FAIR SILK MILLS.

### No. 2611.

Court of Customs and Patent Appeals.

Feb. 11, 1931.

Baldwin & Wight, of Washington, D. C. (Frank A. Bower, Isadore Seltzer, and Chas. W. Levinson, all of New York City, of counsel), for appellant.

Mason, Fenwick & Lawrence, of Washington, D. C. (Edward T. Fenwick, Edward G. Fenwick, and Charles R. Fenwick, all of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents dismissing the opposition of appellant and holding that appellee was entitled to the registration of the mark "Silkenese" for use on knitted and textile underwear, consisting of vests, bloomers, knickerbockers, drawers, union suits, chemises, envelope chemises, corset covers, nightgowns, bathing suits, pajamas, pettibockers, step-in drawers, princess slips, bandeaux, bandeau chemises, and men's silk underwear.

In its application for registration, filed May 21, 1927, appellee alleged that it had used the trade-mark "Silkenese" since May 14, 1927.

In its notice of opposition, appellant alleged that it was the owner of the trade-mark "Celanese" for use on threads, yarns, fabrics, and garments; that it had continuously used said trade-mark on its goods since long prior to the first use by appellee of the trade-mark "Silkenese"; that it had expended large sums of money in advertising its trade-mark throughout the United States; that it has maintained the highest standards in the manufacture of its goods; that it has built up and is maintaining a large and valuable business throughout the United States in the manufacture and sale of its goods under the trade-mark "Celanese"; that the goods of the parties possess the same descriptive properties; and that the mark "Silkenese" sought to be registered by appellee is confusingly similar to appellant's trade-mark "Celanese."

Appellant pleaded ownership of the following trade-mark registrations: No. 178,-422, January 8, 1924, of the trade-mark "Celanese" for use on "threads made wholly or principally from cellulose derivatives"; No. 179,796, February 19, 1924, for the trade-mark "Celanese" for use on "fabrics made wholly or principally from cellulose derivatives"; No. 186,516, July 22, 1924, for the trade-mark "Celanese" for use on "Ladies' knitted underwear—namely, knickers, and vests"; No. 191,844, November 18, 1924, for the trade-mark "Celanese" in combination with the word "brand" for use on "Women's and children's outerwear—namely, dresses, sweaters, jumpers, suits, gowns, and coats"; No. 207,622, January 5, 1926, for the trade-mark "Celanese" for use on "men's half hose"; No. 225,285, March 15, 1927, for the trade-mark "Celanese-locknit" for use on "knitted, netted, and textile fabrics made wholly or partially of cellulose derivatives"; No. 226,304, April 5, 1927, of the trade-mark "Celanese" for use on "pyjamas, negligee shirts, undershirts of knitted fabric and textile fabric, collars, neckties, scarfs, mufflers, fabric gloves, cut-out linings for men's and women's coats and suits; men's underwear of knitted fabric and

textile fabric; women's and children's hosiery"; No. 229,356, June 28, 1927, for the trade-mark "Celanese ninon" for use on "woven, knitted, netted, and textile fabrics, in the piece, made wholly or partially of cellulose derivatives."

In its answer, appellee denied the material allegations contained in the notice of opposition and alleged that the opposer, appellant, was neither the originator nor the first to use a trade-mark which contained the "prefix the syllable or the letters 'Cela'" or the "suffix, syllable, or letters 'nese'" in a trade-mark for use on goods possessing the same descriptive properties as those upon which appellant used the trade-mark "Celanese."

Testimony was submitted by each of the parties.

It appears from the evidence submitted by appellee that it has been engaged in the manufacture and sale of garments and piece goods composed of silk for many years prior to March, 1927, and that its goods were sold under the trade-marks "Vanity Fair" and "Vanitysilk"; that in March, 1927, appellee added to its line of silk goods certain articles and fabrics composed of "Japan silk and Bemberg synthetic yarn," on which it decided to use the trade-mark "Silkenese"; that it expended approximately $15,000 in advertising its so-called artificial silk goods and the trade-mark "Silkenese." It also appears that appellant's celanese yarn was known to appellee as an artificial silk product. The witnesses for appellee admitted that the trade-mark "Silkenese" was never used on appellee's piece goods.

It appears from the evidence offered by appellant that it expended from $200,000 to $300,000 in advertising its trade-mark "Celanese" and its so-called celanese products; that it used its trade-mark "Celanese" on yarns, piece goods, and on the various garments referred to in registrations Nos. 186,516, issued July 22, 1924, 191,844, issued November 18, 1924, and 207,622 issued January 5, 1926, long prior to the use by appellee of its mark "Silkenese" on its products. Appellant also introduced considerable testimony tending to establish that confusion already existed in the trade as to the goods bearing the marks "Silkenese" and "Celanese."

The Examiner of Interferences held that the goods of the respective parties possessed the same descriptive properties; that appellant had used its trade-mark "Celanese" long prior to the use by appellee of its trademark "Silkenese"; that the trade-mark "Silkenese" so closely simulated the trade-mark "Celanese" as to be likely to cause confusion in the mind of the public and, accordingly, sustained the opposition.

The Commissioner of Patents held that appellant had used its trade-mark "Celanese" on yarn, piece goods, and garments long prior to the use by appellee of the trade-mark "Silkenese"; that appellant had a very extensive business; and that its trade-mark was a valuable asset. He then said:

"Since the goods are deemed to possess the same descriptive properties and since it is regarded as established that the opposer was first in the field with its mark upon its goods, the decision in this case turns upon the question of similarity of the marks. * * * The only similarity to the applicant's mark resides in the suffix 'nese' or 'ese.' This suffix has a definite meaning in our language when used in connection with certain words as signifying of or pertaining to. In the words Chinese, Japanese, Javanese, etc., this suffix indicates the people of such countries or goods or customs of the respective countries. The word 'silken' of the applicant's mark is an ordinary descriptive word indicating a quality or the nature of the fabric or the goods. There is nothing similar in appearance, significance, or meaning between 'celan' and 'silken' and there is only a remote similarity in sound. The similarity between the two notations is regarded as residing substantially entirely in the suffix 'nese' or 'ese.' If the opposer were the first to adopt upon goods of this character a notation ending in these letters, its claim for the broad protection it seeks might be more favorably considered. The applicant has, however, established that trade marks having these same letters as suffixes have been used and are still used upon goods of this same general character from a date long prior to the earliest date opposer entered the field.

"Registration No. 135,857, issued Oct. 19, 1920, is for the notation "Pominese" used upon woolen goods in the piece. Trade mark No. 174,132, registered Oct. 2, 1923, is for the notation 'Bernese Swiss' used upon cotton goods in the piece. There is testimony of Charles Twining that this last named mark is still in use. There is also testimony showing the mark 'Pominese' has been used in the trade. The testimony of H. L. Hoff and H. B. Snader is to the effect that the notation or trade name 'Milanese' has been quite widely used in connection with silk fabrics. In view of these established facts as to prior adoption and use of marks upon this class of

goods, which marks have the same suffix which constitutes the only similar portion of the two marks here under review, *it is deemed the opposer is not entitled to such a breadth of protection as would preclude others from using any mark or notation however dissimilar from opposer's which has the same suffix."* (Italics ours.)

Accordingly, the Commissioner of Patents reversed the decision of the Examiner of Interferences, dismissed the opposition of appellant, and adjudged the applicant, appellee, entitled to the registration of its trademark "Silkenese."

It is claimed by appellant that the goods of the respective parties possess the same descriptive properties; that the marks are confusingly similar; and that appellant will be damaged by the registration of appellee's mark "Silkenese."

Counsel for appellee, on the contrary, contends that the marks are not confusingly similar; that appellant has never used the mark "Celanese" on garments in commerce, although it has registered its mark "Celanese" for use on such articles; and that, in view of the prior registrations of trademarks ending in "nese," appellant is not the originator of a mark ending with those letters, and, therefore, is not entitled to broad protection in the use of its mark "Celanese."

It is not contended here that appellee was the first to adopt and use a trade-mark ending in the letters "nese." It may be that appellant was not entitled to the registration of its mark "Celanese." However, that question is not before us and will not be considered by this court in this proceeding. Sharp & Dohme v. Parke, Davis & Co., 37 F.(2d) 960, 17 C. C. P. A. 842; American Fruit Growers, Inc., v. Michigan Fruit Growers, Inc., 38 F.(2d) 696, 17 C. C. P. A. 906; National Biscuit Company v. Joseph W. Sheridan, 44 F.(2d) 987, 18 C. C. P. A. ——; Decker & Cohn, Inc., v. S. Liebovitz Sons, Inc., 46 F.(2d) 179, 18 C. C. P. A. ——.

From a careful examination of the record we are satisfied that the tribunals below were right in holding that appellant has used its trade-mark "Celanese" on yarn, fabrics, and garments since long prior to any use by appellee of its mark "Silkenese"; and that the goods of the respective parties possess the same descriptive properties. It appears from the record that, prior to the year 1927, appellee had been engaged in the manufacture of piece goods and garments composed of silk; that it used the trade-marks "Vanity Fair" and "Vanitysilk" on those products;

that it was not until March, 1927, that appellee commenced the manufacture of so-called artificial silk products; and that, when it did so, it decided to advertise and sell them under the trade-mark "Silkenese." At, and prior to, that time, appellant's products and its mark "Celanese" had been extensively advertised and were generally known throughout the United States.

The goods of the respective parties are sold in the same stores and to the same class of people. Furthermore, they are so nearly alike in appearance and texture that, if sold under similar trade-marks, confusion would likely result. Nevertheless, appellee selected a trade-mark closely simulating the trademark of appellant. It is true that the marks are not identical and that they differ to some extent both in sound and in appearance. However, the public should not be required to analyze trade-marks with scrupulous care, nor should it be compelled to resort to a study of etymology in order to avoid confusion and mistake. Apex Electrical Mfg. Co. v. Landers, Frary & Clark, 41 F.(2d) 99, 17 C. C. P. A. 1184; Postum Cereal Co. v. Enzo Jel Co., 41 F.(2d) 101, 17 C. C. P. A. 1258.

We are of opinion that the marks are confusingly similar, and that appellee is not entitled to have its mark registered.

The decision is reversed.

Reversed.