## ARMSTRONG CORK & INSULATION CO. v. BANNER ROCK PRODUCTS CO.

### Patent Appeal No. 2645.

Court of Customs and Patent Appeals.
May 25, 1931.

Edward S. Rogers and Allen M. Reed, both of Chicago, Ill. (T. L. Mead, Jr., of Washington, D. C., of counsel), for appellant.

Lockwood, Lockwood, Goldsmith & Galt, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents, dismissing a petition for cancellation of a trade-mark registered by the Banner Rock Products Company March 5, 1912.

The trade-mark sought to be canceled consists of the words "Rock Cork," the letters of which are consolidated and so placed as to present a novel appearance. $\begin{smallmatrix} R & C \\ O & K \\ C & R \end{smallmatrix}$ represents the arrangement of the letters; the C and K being in large black type and occupying more than twice the space of the other letters, which are in smaller type.

The Banner Rock Products Company, which uses the "Rock Cork" trade-mark, is the manufacturer and originator of a thermo-insulating material which it began manufacturing and selling under the name "Rock Cork" in 1907. The material is in the form of a board made by binding rock wool with a waterproof binder. The process of making it is a water process, in which the material is molded into different thicknesses and dried. The rock is obtained from a quarry adjacent to the factory of appellee, which rock is termed "argillaceous" limestone. The rock is melted in a specially designed equipment by means of coke. The melted rock as it runs from the melting equipment is first hit with either a high pressure air jet or steam jet and shredded into fibers. This is then known as "rock wool" with which is mixed, in a special vat, a binder that secures the fibers into permanent position. This material is then molded into different shapes and thicknesses, and is dried, trimmed, and placed on the market to be sold chiefly to the manufacturers of refrigerating units, and to the builders of structures which require low temperatures.

The appellant, the Armstrong Cork & Insulation Company, operates the insulation division of the Armstrong Cork Company, and is one of three manufacturers of cork board in the United States. It operates several factories in this country, and has factories and depots abroad. It manufactures and sells many different kinds of cork products. Its sales run between forty and seventy-five million board feet of cork insulation per year. Cork board is a well-known standard insulating material. Its good insulating properties have long been known to those familiar with the subject of thermoinsulation. Cork board is made from cork, and cork is the outer bark of the cork oak tree which grows principally in Spain, Portugal, and Algeria. Cork, in the common understanding, is a vegatable substance. In manufacturing cork board, the cork bark is granulated, sized, cleaned, pressed in molds, and baked. The record shows that the petitioner, and its predecessors, have been manufacturers of cork articles since 1861 and of cork board since 1904, and that appellant and appellee, during a period of almost a quarter of a century, have been merchandising their products to the same class of customers with the full knowledge of each of the parties of the composition of each other's product and the trade terms used in describing the same.

Appellant bases its petition for cancellation of the trade-mark "Rock Cork" upon the proposition that the term is deceptive and misleading, and is misdescriptive of appellee's product, inasmuch as its product contains no cork and is chiefly a mineral substance, and claims the right to petition for cancellation under section 13 of the Trade-Mark Act of February 20, 1905 (15 USCA § 93), for the reason that it is damaged by the alleged misconception brought about by the misdescriptive character of the term "Rock Cork" as applied to appellee's thermo-insulating material.

The Examiner of Interferences dismissed the petition and recommended that appellee's registration be not canceled, which decision was affirmed by the Commissioner of Patents.

The Examiner of Interferences held that the record showed that from the very beginning it was the intention of the users of the "Rock Cork" trade-mark to inform purchasers of the properties of its material and also of its mineral origin, and that it was not intended to deceive, and that the term "Rock Cork" was not misdescriptive to the extent that the purchasers of this character of material would be misled into believing that appellee's merchandise consisted of cork, and, among other things, said:

" * * * In the new use of such a word, or combination of words, information is imparted concerning one or more characteristics of the article designated thereby. Such for example are the notations 'Steel Wool,' 'Dry Ice,' 'Ivory Soap' and 'Gold Dust Washing Powder.' In the last two instances, the

marks are used to obtain the function of indicating origin of the goods. The word 'Ivory' used on soap informs the purchasers of the soap that it has an appearance somewhat like Ivory. Similarly, the use of the words 'Gold Dust' on a washing powder of a golden color, tells purchasers something of this property. The record clearly shows that it was the intention of the respondent from the very beginning to so use the notation 'Rock Cork' as to inform purchasers of some of the properties of the material and also its mineral origin. This is especially shown by the circulars which enables this function to be obtained from the notation 'Rock Cork.' * * * The notation 'Rock Cork' so used performs a function similar to that performed by the notations 'Steel Wool' and 'Dry Ice.' "

The Examiner called attention to the fact that purchasers of "Rock Cork" ordinarily were those who bought for the purpose of building it into other structures, and that they were a discriminating class of purchasers, and, further, that the record, though long, was devoid of a single instance where a purchaser of registrant's product had been led to believe that it contained cork. The Examiner furthermore pertinently said:

" * * * Improbable as it may seem, the examiner realizes that there may be here and there an architect who may purchase the respondent's material and who may assume that it contains cork. It is also theoretically conceivable that here and there a person may exist who assumes that there is cream in cream of tartar; milk in the pharmaceutical substance known as milk of magnesia; that there are edible sponges in sponge cake; that the confection known as Eskimo Pie is pie that is either made by Eskimos or a formula obtained from Eskimos; and that there is soda in soda water. As to such persons, it is believed, however, that it is justifiable to apply the maxim 'Qui vult decipi, decipiatur.' "

We agree with the above-quoted views expressed by the Examiner of Interferences and the views, on this phase of the case, which are well expressed in the decision of the Commissioner, which decision affirmed the decision of the Examiner of Interferences.

The Examiner of Interferences furthermore ruled that there was a distinction between a public and a private right of action in a case of this character and that the petitioner had no such private right as entitled it to claim that it was damaged within the meaning of the statute. In view of our conclusions hereinafter reached, it is not necessary for us to pass upon the right of appellant to bring such action in event it was held that the mark "Rock Cork" was deceptive and misleading.

Much testimony was taken by both parties, chiefly of witnesses who were in some way interested in or had been interested in the manufacture, sale, or construction of refrigerating units of some kind. Most of appellant's witnesses testified that, upon seeing the term "Rock Cork," they would assume that the material contained cork; a few of them said that they did assume that it contained cork; but no one of them testified that he had been influenced, in any degree, to purchase appellant's product on account of his believing that it contained cork.

Appellant seems to proceed upon the theory that genuine cork is a material which, for a very long time, has been better and more favorably known as an insulating material than any other, and that appellee seeks by its alleged misleading trade-mark to palm off on the public, for genuine cork board, a cheaper and less efficient material. The witnesses differ as to which is the best insulating material. Some of the witnesses point out that cork has been proven to be more effective in its nonconducting properties and that the material which some of them style "asbestos cork" or a "mineral wool" product is, for other reasons, less desirable than genuine cork. Some of the testimony is to the effect, however, that appellee's mineral product is not so subject to decay as is genuine cork, and has other properties which are desirable and which are not present in the genuine cork.

One thing stands out prominently, and that is that the whole picture presented by the record is not a case of the owner of cheap inferior goods attempting to palm off his goods as the goods of another or of attempting to represent that his goods have qualities which they do not possess. On the contrary, appellee's business is large and obviously prosperous, and no reason is shown why it should trade upon the good will of others. There is no evidence in the record of any misunderstanding in the minds of those who purchased "Rock Cork" from appellee, and we do not think there is any reasonable likelihood of any such misunderstandings arising in the future.

Appellant has pointed out that the salesmen of Frigidaire which makes use of "Rock

Cork" as its insulating material, have misrepresented, either ignorantly or designedly, that the "Rock Cork" used in Frigidaire insulation is, at least in part, composed of genuine cork. While it may be that this is a matter that might have some bearing in some cases, under certain statements of fact, we cannot see how it can be controlling under a statement of facts such as is at bar. See American Washboard Co. v. Saginaw Mfg. Co. (C. C. A.) 103 F. 281, 50 L. R. A. 609.

Appellee's exhibits disclose that, in advertising its goods, it keeps prominently to the front the fact that its product is a mineral one. Much of its advertising is devoted to putting forth the rock character of its product, using such statements as "Originators of Rock Wool Products" and by associating a portion of the corporate name "Banner" and the word "Rock" to produce the word "Banrock" and adding the word "Products." In fact, to us the use of the term "Rock Cork" suggests that the product has the qualities of rock and cork. It may not suggest all the properties of either, but does suggest some of the properties of both, and we think it does so without being offensively descriptive or misdescriptive.

In this view of the case we conclude that appellant has not been nor is it likely to be damaged within the meaning of section 13 of the Trade-Mark Act, supra, and that the decision of the Commissioner of Patents properly affirmed the action of the Examiner in dismissing the petition for cancellation, and the decision of the Commissioner is affirmed.

Affirmed.