## CELOTEX CO. v. BRONSTON BROS. & CO., Inc.

### Patent Appeal No. 2886.

Court of Customs and Patent Appeals.

June 1, 1931.

See also 49 F.(2d) 1051, 1053.

Charles M. Thomas, of Washington, D. C., Samuel E. Darby, Jr., and John S. Bradley, both of New York City, and William E. Seaver, of Washington, D. C., for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences, dismissing the opposition and adjudging that the applicant was entitled to the registration of its trade-mark.

The trade-mark of opposer is "Celotex" and the trade-mark of the applicant is

"Flametex." Both marks are applied to wall board.

The Celotex Company was organized in 1920 and began the manufacture of wall board known as "Celotex" in 1921 and has increased its production from 18,000,000 square feet in 1922 to approximately 500,-000,000 square feet in 1929. Seven thousand retail dealers in eighty-two countries, on the last-named date, were handling "Celotex." More than $3,500,000 have been expended in advertising "Celotex." Appellant claims that the word "Celotex" has become a "by-word" for wall board and that the merchandise represented by it has an enviable reputation for its insulating and sound absorbing properties. From 1921 to 1928 appellant states no other manufacturer of wall board made any effort to use any trade-mark on its product which involved the suffix "tex" or in any other way sought to simulate its trade-mark; that beginning with the year 1928 a great number of manufacturers of wall board, including applicant, adopted trade-marks which appellant contends closely resemble "Celotex" and with the obvious purpose of trading upon the popularity of appellant's mark.

In applicant's answer to the notice of opposition of opposer is found the following: "Applicant avers that there is no similarity in sound of the two marks Flametex and Celotex, except in the last syllable tex. And in view of the numerous registrations in the same class of goods, of trademarks ending with the suffix tex, to mention a few; Hytex, Unitex, Walltex, Maftex, Suntex, etc., which proves that the opposer has not the exclusive right to the suffix tex."

The above-quoted suggestion evidently was given great weight by the commissioner, since in his opinion we find the following: "A considerable number of trade-marks ending in this syllable 'tex' previously registered for use upon the same class of goods have been noted in the answer, the inference being drawn that 'tex' is either publici juris and not capable of exclusive appropriation by anyone, or that this syllable has become so widely known and so commonly used in connection with similar goods that the public would not rely upon it in connection with the opposer's or the applicant's mark."

In determining the right to register a trade-mark which was so confusingly similar to a known or registered trade-mark owned by another as to be likely to confuse purchasers, this court has frequently said that the question of confusion was the test.

That confusion would result from the registration and use of "Flametex" on wall board, in view of the well-known registered mark "Celotex," seems too clear to require extended discussion or citation. Furthermore, it seems obvious that the applicant adopted "Flametex" with a view of profiting by the confusion that would result. The applicant has not appeared here, either by brief, or by counsel for oral argument, and no reason is given anywhere in the record why appellee with a wide field to select from chose the word "Flametex."

In Lever Brothers Co. v. Riodela Chemical Co., 41 F.(2d) 408, 410, 17 C. C. P. A. 1272, we throughly discussed this phase of the case and there had the words "Tex" and "Lux" before us for consideration. We there used language which is particularly applicable here:

" * * * we are of the opinion that the word 'Tex' was selected in the hope and belief that such confusion would arise and that appellee would profit thereby. We do not intimate that appellee did not honestly believe that it had a legal right to use the word 'Tex'; it undoubtedly was thought that its mark had been differentiated from that of appellant sufficiently to be protected by the law, but that a benefit would be reaped from its close approximation to appellant's mark. That appellee had knowledge of appellant's mark at the time it adopted the word 'Tex' is fairly presumed from the facts set out in the stipulations. * * *

"Of course, if confusion or mistake is not likely to result from the use of the two marks, the motive of the later applicant in adopting its mark cannot affect its right to registration; but if, in the adoption and use of the mark, there be a purpose of confusing the mind of the public as to the origin of the goods to which it is applied, we have a right, in determining the question of likelihood of confusion or mistake, to consider the motive in adopting the mark as indicating an opinion, upon the part of one vitally interested, that confusion or mistake would likely result from use of the mark. After all, the determination of the question of likelihood of confusion or mistake in the use of trade-marks must, as a general rule, be a matter of opinion, and not the result of testimony produced as to the existence or absence of such confusion. Therefore the tribunals of the Patent Office, and this court as a reviewing body, may, in cases where one adopts and uses a mark with the motive of confusing the mind of the public, consider that motive as one

of the factors in determining the question of whether use of such mark is likely to cause confusion or mistake in the mind of the public."

There is no contention anywhere that "Celotex" is not a valid mark. The commissioner concluded that the suffix "tex" had become public property because of the fact that a considerable number of trade-marks ending with the syllable had been previously registered for use upon the same class of goods and other goods, and evidently gave this fact controlling effect in his decision.

It seems to us that this line of reasoning suggests that if there is confusion or a strong probability of confusion due to the presence of the term "tex" in both marks, that such confusion is excusable and is not sufficient basis for a refusal to register. Irrespective of any rights which the parties or other trade-mark users may have in equity, as determined by their conduct and the use of their respective marks, the registration statute by its express terms denies registration if confusion to purchasers results. As we see it, Congress, by creating a place of registration, sought to minimize rather than to add to the public's confusion.

Oftimes the users of confusingly similar trade-marks get themselves into such a position that equity cannot interfere and the public interest cannot be adequately protected. By providing a place of registration and making available certain beneficial results flowing therefrom, Congress, although not privileged to change common law trade-mark rights, has done much to improve the whole trade-mark situation.

The test with the commissioner should have been: Are "Flametex" and "Celotex," under the circumstances of this case, confusingly similar when applied to wall board? We think they are.

In B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F.(2d) 99, 104, 17 C. C. P. A. 1068, the court, in an opinion by Hatfield, J., said: "It is argued by counsel for appellee that the word 'Zip' is a common English word and that appellant has no right to the exclusive use of it as a trademark. The answer to this argument is that appellant's trade-mark is 'Zipper,' not 'Zip.' Nor is appellant entitled to the exclusive use of every trade-mark formed by the use of the word 'Zip.' But surely, if the statute providing for the registration of trade-marks is not to be a weapon for the perpetration of fraud and deceit, registrants of trade-marks are entitled to some measure of protection from those who designedly or otherwise closely simulate such marks, and, due to confusion in the mind of the public, trade on the popularity and good will of the registrant."

This court in Apex Electrical Mfg. Co. v. Landers, Frary & Clark, 41 F.(2d) 99, 100, 17 C. C. P. A. 1184, said: " * * * In considering whether a trade-name will be confusing or not, consideration should be given to the whole word. * * * "

In support of our position that appellee is not entitled to register its mark, notwithstanding the fact that the suffix which is common to both marks and which would produce the probability of confusion, was used by others before either of the parties at bar used it, the following authorities are cited: Celanese Corporation of America v. Vanity Fair Silk Mills, 47 F.(2d) 373, 375, 18 C. C. P. A. ——; Sharp & Dohme v. Parke, Davis & Co., 37 F.(2d) 960, 17 C. C. P. A. 842; American Fruit Growers, Inc., v. Michigan Fruit Growers, Inc., 38 F.(2d) 696, 17 C. C. P. A. 906; Decker & Cohn, Inc., v. S. Liebovitz & Sons, Inc., 46 F.(2d) 179, 18 C. C. P. A. ——.

In Celanese Corporation of America v. Vanity Fair Silk Mills, supra, this court, while considering the trade-marks "Celanese" and "Silkanese," used language which, we think, is particularly applicable here. There we said: " * * * It is true that the marks are not identical and that they differ to some extent both in sound and in appearance. However, the public should not be required to analyze trade-marks with scrupulous care, nor should it be compelled to resort to a study of etymology in order to avoid confusion and mistake."

The decision of the Commissioner of Patents is reversed.

Reversed.