## AMERICAN CYANAMID CO. v. SYNTHETIC NITROGEN PRODUCTS CORPORATION.

### Patent Appeal No. 2986.

Court of Customs and Patent Appeals.
May 31, 1932.

H. C. Bierman, of New York City, for appellant.

Charles H. Potter and James F. Pierce, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant, American Cyanamid Company, on May 29, 1928, procured the registration of a trade-mark in the United States Patent Office, on an application filed January 6, 1928. This trade-mark consisted of the word "Ammo-Phos-Ko," arranged in a curve, with a representation of a human hand grasping "flashes of lightning" immediately thereunder, and was used on mixed fertilizer.

The appellee filed petition for cancellation, claiming use of the trade-mark "Nitrophoska" at the time of filing the petition and for a period long prior to December 7, 1927, on mixed fertilizer. The appellee also set up and relies upon the registration of this mark by its predecessor in business, I. C. Farbenindustrie Aktiengesellschaft, on June 28, 1927, on its application filed December 18, 1926.

Both parties took testimony, and it clearly appears that the goods marketed by the appellant and appellee are of the same descriptive properties, and that the business conducted by the said parties is competitive. It further appears that on October 20, 1914, appellant procured registration of the mark "Ammo-Phos" on its application filed June 22, 1914, which mark was used by it on a two element fertilizer, containing nitrogen and phosphorus, from that time until the present.

There is a considerable amount of testimony in the record, and discussion relative to actual confusion, but, in view of our conclusions herein, this matter need not be further discussed.

The Examiner of Interferences dismissed the petition. On appeal to the Commissioner, this decision was reversed and an order entered canceling the registration.

Several points are presented for our consideration. It is first argued that there is no such similarity between the words "Ammo-Phos-Ko" and "Nitrophoska" as to be likely to cause confusion. The patent office tribunals differed in their conclusion on this point.

We are clearly of opinion that the Commissioner was correct in his conclusion that confusion would result from the use of these two marks in competitive trade. The same impression would doubtless be created upon the mind of the ordinary purchaser of fertilizer by these marks. The last two syllables have precisely the same sound. The words convey the same meaning; namely, a combination of nitrogen, phosphorus, and potash. It is a matter of common knowledge

that the words "ammonia" and "nitrogen" indicate the same plant food. Practically every farmer, in these days, knows this. The purchaser of a three element fertilizer would therefore almost certainly be confused by the similarity of sound, appearance, and meaning of these marks. All these factors should be considered. Federal Mill & Elev. Co. v. Pillsbury, etc., Co., 49 F.(2d) 1042, 18 C. C. P. A. 1353. The law does not require that the purchaser should carefully dissect and analyze the marks. The Apex Elec. Mfg. Co. v. Landers, Frary & Clark, 41 F.(2d) 99, 17 C. C. P. A. 1184; Celotex Co. v. Millington, 49 F.(2d) 1053, 18 C. C. P. A. 1484.

It is argued that the petitioner should not be given the relief it seeks here because of the fact that the appellant entered the field long prior to the appellee with its mark "Ammo-Phos"; that appellee, in adopting the mark "Nitrophoska," adopted a mark which was deceptively similar to that of appellant.

We are unable to discern wherein this constitutes a proper subject of rebuttal on the part of appellant. The validity of appellee's registration of its mark "Nitrophoska" will be assumed for the purposes of this proceeding. We have so held in opposition proceedings, and no reason appears why the same rule should not be applied to cancellation proceedings, where the registered mark in question is not sought to be canceled. Celanese Corp. v. Vanity Fair Silk Mills, 47 F.(2d) 373, 18 C. C. P. A. 958; Walgreen Co. v. Godefroy Mfg. Co., 58 F.(2d) 457, 19 C. C. P. A. ——, and cases therein cited.

It is quite earnestly contended that the burden rested upon the petitioner in this case to establish by facts appearing in the record that it was damaged by the registration of appellant's mark; that such proof must be proof of actual, not possible or theoretical, damage; that no such proof appears in the record; and that hence the petitioner has failed to establish its case. In this connection appellant's counsel calls attention to the difference in language between the statutory provisions for opposition to, and cancellation of, registration of trade-marks. Sections 6 and 13, Trade-Mark Act of February 20, 1905, as amended (15 USCA §§ 86 and 93). In the first of said sections, providing for opposition, one may oppose "who believes he would be damaged." In the second, providing for cancellation, a petition may be filed by one who shall "deem himself injured." This latter language, it is argued, requires a different degree of proof, namely, proof of actual damage, than is required by the first.

Shoemaker, in his work on Trade Marks, vol. 2, p. 936, makes the following statement, which fairly states the apparent intent of the various provisions of this trade-mark act:

"Cancellation proceedings are similar, in a great many respects, to interferences and to oppositions. The same issues of priority, similarity of marks, character of the goods to which the marks are applied, etc., may arise in each of these proceedings. In an interference one party must be an applicant for registration and the other parties either applicants for registration or owners of registrations; in an opposition proceeding one party must be an applicant for registration while the position of the other party with respect to his claiming a trade-mark is not essential; in a cancellation proceeding one party must be the owner of a registered trade-mark. The purpose of an interference is to decide a conflict between rival claimants, of an opposition to prevent the registering of a trade-mark, and of cancellation to remove a registration already effected.

This court, in considering such cancellation proceedings as have come before it, has applied similar rules of construction as are applied in opposition proceedings. Cases in point are Model Brassiere Co. v. Bromley-Shepard Co., 49 F.(2d) 482, 18 C. C. P. A. 1294; Armstrong, C. & I. Co. v. Banner Rock Prod. Co., 49 F.(2d) 971, 18 C. C. P. A. 1367; United Shoe M. Corp. v. Compo S. M. Corp., 56 F.(2d) 292, 19 C. C. P. A. ——; Buckeye Soda Co. v. Oakite Prod., 56 F.(2d) 462, 19 C. C. P. A. ——.

So similar in character is the nature of the proceedings that we have held that an issue which was or might have been raised and determined in an opposition proceeding constitutes res adjudicata in a subsequent cancellation proceeding. American Fruit Growers v. Braadland, 45 F.(2d) 443, 18 C. C. P. A. 790; Williams Oil-O-Matic H. Corp. v. Butler Co., 39 F.(2d) 693, 17 C. C. P. A. 934.

It is true, as announced in some of these cases, that damage must be shown in cancellation proceedings. But there can be no doubt that damage is established by the proof in this case. The appellee was using its registered mark in interstate commerce at the time its petition for cancellation was filed. These are sufficient facts from which damage will be assumed.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

GARRETT, Associate Judge (specially concurring).

From the facts shown in the record in this case, I agree that cancellation of appellant's mark is proper. It seems to me, however, that the trend of the opinion of the honored PRESIDING JUDGE is to the effect that one seeking cancellation of a trade-mark is under no greater burden than an opposer to a registration. I am not prepared at this time definitely to hold that such is the law. The differences in language of the respective sections of the statutes, dealing with oppositions and cancellations, while slight, is possibly significant, particularly when it is remembered that valuable trade may have been built up under a registered mark, which may be seriously affected by the cancellation of that mark.

So far as I am concerned, the particular subject-matter herein pointed out remains an open question to be considered when occasion arises.