46 CCPA

**SHOE CORPORATION OF AMERICA,**
Appellant,

v.

**JUVENILE SHOE CORPORATION of**
America, Appellee.

**Patent Appeal No. 6334.**

United States Court of Customs
and Patent Appeals.
April 28, 1959.

A. Yates Dowell and A. Yates Dowell, Jr., Washington, D. C., for appellant.

Kingsland, Rogers & Ezell, St. Louis, Mo. (Edmund C. Rogers, St. Louis, Mo., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, JJ.

O'CONNELL, Acting Chief Judge.

This case was originally argued here on January 10, 1958, and an opinion was thereafter rendered by the court on April 23, 1958. A petition for rehearing was subsequently filed by appellee and the case was set for further argument on November 6, 1958. Pursuant to such argument and the additional briefs filed by the parties, the opinion of April 23, 1958, is hereby withdrawn and the following opinion is substituted therefor:

The appeal was taken in an opposition proceeding from the decision of the Assistant Commissioner of Patents, 110 US PQ 430, affirming the decision of the Examiner of Interferences, which sustained the opposition and held that the applicant (appellant here) was not entitled to the registration sought.

Appellant applied for registration on the principal register of its mark "Lazy Pals" for men's, women's and children's shoes, asserting use since January 21, 1949. Registration was opposed by appellee, owner of a registration for "Lazy Bones" for shoes and slippers of leather or kid.[1] The letters making up the mark "Lazy Bones" are each somewhat suggestive of bones. The record indicates that first use of appellee's "Lazy Bones" was in October, 1935, and appellant's "Lazy Pals" sometime in 1949. Both marks have been used continuously since the date of first use. Thus, appellee is clearly the prior user.

Appellant's application as hereinbefore described states that "Lazy Pals" is used in conjunction with "shoes for men, women and children" while appellee's registration certificate recites "shoes and slippers of leather or kid." Appellee's witness, however, testified that the mark "Lazy Bones" is not applied to men's shoes. Appellant's witnesses testified that "Lazy Pals" is used only on men's house slippers. Appellant relies on this distinction in goods in its argument that there is no possibility of confusion between the marks in issue. We cannot agree with appellant's view of this aspect of the case, in view of section 7(b) of the Lanham Act, which provides:

"A certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce *in connection with the goods or services specified in the certificate,* subject to any conditions and limitations stated therein." (Emphasis added.) 15 U.S.C.A. § 1057 (b).

It is obvious from the above provision that appellant cannot rely on certain goods recited in its application for registration, and then assert in an opposition proceeding, on the basis of testimony adduced during such proceeding, that the goods with which its mark is used differ from those recited in its application. Therefore, we shall restrict ourselves to a consideration of the goods recited in appellant's application, and for the purposes of this proceeding, consider the goods of the respective parties to be practically identical. The case thus re-

1. Reg. No. 333,127, issued March 10, 1936, renewed and republished under § 12(c) of the Lanham Act, 15 U.S.C.A. § 1062 (c), on July 5, 1949.

duces itself to the question of confusing similarity between appellee's "Lazy Bones" and appellant's "Lazy Pals."

The Assistant Commissioner in reaching the conclusion that concurrent use of the two marks in issue would result in likelihood of confusion placed stress on a consent decree which had been entered into by the parties to this proceeding at a time prior to appellant's adoption and use of the mark "Lazy Pals," and stated:

"The parties of this proceeding are not strangers to one another. In December of 1947 applicant changed its name from The Schiff Company to Shoe Corporation of America. The Juvenile Shoe Corporation of America, opposer here, filed a civil action against applicant in the District Court for the Eastern District of Missouri, and on October 22, 1948 a consent decree was entered enjoining applicant from using the name 'Shoe Corporation of America' in connection with the manufacture, advertisement, purchase, sale or shipment of shoes (except to its own subsidiaries and wholly-owned retail stores and departments), and permitting the use of the name for signing leases, borrowing money and other corporate purposes, but only in conjunction with the words 'An Ohio Corporation.' Three months after entry of the decree, applicant commenced using the mark 'Lazy Pals'; and five months after entry of the decree, the application to register 'Lazy Pals' was filed in the name of 'Shoe Corporation of America.'

"Applicant's record shows that it continues to use the name 'Shoe Corporation of America' in buying shoes."

The Assistant Commissioner concluded, in the light of the above, and in view of appellee's extensive advertising and sales of its shoes under the mark "Lazy Bones," that "this course of conduct on the part of applicant indicates an intent to trade in some manner on opposer's good will." That conclusion, taken in conjunction with the similarities which she felt exist between the two marks, led her to decide that "their contemporaneous use is reasonably likely to cause confusion or mistake or deception of purchasers," and accordingly to sustain the opposition.

We are of the opinion that the Assistant Commissioner erred in giving undue weight to the consent decree and in sustaining the instant opposition.

■ Evidence bearing upon the motive of a party in selecting a given trademark may influence the ultimate question of likelihood of confusion. Lever Brothers Co. v. Riodela Chemical Co., 41 F.2d 408, 411, 17 CCPA 1272. There it was stated that:

" * * * if, in the adoption and use of the mark there be a purpose of confusing the mind of the public as to the origin of the goods to which it is applied, we have a right, in determining the question of likelihood of confusion or mistake, to consider the motive in adopting the mark as indicating an opinion, upon the part of one vitally interested, that confusion or mistake would likely result from use of the mark. * * *"

■ Notwithstanding the foregoing citation, intent is not necessarily controlling in an opposition proceeding, as this court further held in the same decision:

"Of course, if confusion or mistake is not likely to result from the use of the two marks, the motive of the later applicant in adopting its mark can not affect its right to registration; * * *"

■ The similarity between "Lazy Pals" and "Lazy Bones" resides in the common word "Lazy." That word, as applied to shoes, is not arbitrary. It contains a definite suggestion of comfort, relaxation and suitability for informal wear. Words or syllables of that character are considered to be weak in a trademark sense and will not be given as great weight in determining the like-

lihood of confusion between marks as will words or syllables which are of an arbitrary nature. Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 44 CCPA 880, and cases there cited.

We are of the opinion that prospective purchasers would be more apt to regard the word "Lazy" in each of the marks here involved as indicative of the character of the shoes, rather than of their origin; and that the distinctive words "Pals" and "Bones" would be relied on as identifying the source from which they emanated.

Appellant has called attention to the following five trademarks involving the initial word "Lazy," which have been registered for footwear: "Lazy Lacer," Reg. No. 362,784; "Lazy Lad," Reg. No. 374,144; "Lazy Joe," Reg. No. 417,125; "Lazy Dogs," Reg. No. 420,814; and "Lazy H," Reg. No. 574,031.

Appellee urges that third party registrations may not properly be considered in these proceedings and cites the following authorities in support of that proposition: Sharpe & Dohme v. Parke, Davis & Co., 37 F.2d 960, 17 CCPA 842; American Fruit Growers, Inc. v. Michigan Fruit Growers, Inc., 38 F.2d 696, 17 CCPA 906; California Packing Corporation v. Tillman & Bendel, Inc., 40 F.2d 108, 17 CCPA 1048; Standard Oil Co. v. Epley, 40 F.2d 997, 17 CCPA 1224; MacEachen v. Tar Products Corp., 41 F.2d 295, 17 CCPA 1264; Federal Mill & Elevator Co., Inc. v. Pillsbury Flour Mills Co., 49 F.2d 1042, 18 CCPA 1353; Weyenberg Shoe Manufacturing Co. v. Hood Rubber Co., 49 F.2d 1046, 18 CCPA 1449; National Biscuit Co. v. Sheridan, 44 F.2d 987, 18 CCPA 720; Decker & Cohn, Inc. v. S. Liebovitz Sons, Inc., 46 F.2d 179, 18 CCPA 781; Celotex Co. v. Millington, 49 F.2d 1053, 18 CCPA 1484; Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 18 CCPA 1507.

██ The foregoing decisions, so far as they may hold that third party registrations can never be considered in deciding whether an opposer's mark is con-fusingly similar to that of an applicant, are not sound. In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise. If it has been frequently so used, the inference is warranted that it is not purely arbitrary; that it would be likely to be understood by purchasers as identifying or describing the merchandise itself, rather than the source thereof, and hence as having little or no trademark significance.

While the cases relied on by appellee have not been heretofore expressly overruled, this court, in recent years, has considered third party registrations as bearing on the weight to be given to portions of trademarks. Burroughs Wellcome & Co., Inc. v. Mezger Phar. Co., Inc., 228 F.2d 243, 43 CCPA 703; Lauritzen & Co., Inc. v. Borden Co., 239 F.2d 405, 44 CCPA 720. See also Holiday Casuals v. M. Beckerman & Sons, Inc., 228 F.2d 224, 43 CCPA 731. It is to be noted also that in trademark infringement cases, third party registrations are commonly considered in passing on the question of confusing similarity. Cases to this effect are cited and discussed in articles by Jenney, 29 Journal of the Patent Office Society 669 (1947), and Derenberg, 38 Trade Mark Reporter 831, 854, 855 (1948).

We conclude that our earlier decisions, so far as they indicate that third party registrations can never be given any weight in deciding an issue of confusing similarity, are too broad and they are hereby overruled.

██ For the purposes of the instant case, we rely on the third party registrations only as establishing what appears on their faces, namely, that each registrant made application to the Patent Office claiming that he had adopted and used the mark shown in commerce and that the registration was granted. We need not determine whether the registrations afford evidence as to the extent to which the marks were or are used in com-

merce. We regard the registrations only as evidence that five other concerns have considered five other marks, each of which contains "Lazy" as its initial word, to be appropriate as trademarks for shoes.

The registration of five such marks can scarcely be attributed to mere coincidence, but affords definite evidence that the word "Lazy" has a suggestive significance as applied to shoes and hence would be taken primarily as describing or suggesting some quality of the shoes rather than as pointing to their origin.

■ Considering the marks as a whole, we do not feel that the public would be likely to be confused by the concurrent use thereof. Aside from the connotation and similarity caused by the word "Lazy," the marks do not otherwise look alike or sound alike. Almost any two-word mark bearing the prefix "Lazy" would suggest comfort and relaxation (viz.: "Lazy Dogs," "Lazy Lad," "Lazy-Joe," etc.).

It is necessary, however, to consider a further contention of appellee. Appellee argues that appellant is under an "especial duty to avoid confusion" due to the fact that "there is an inherent similarity in Appellant's name, Shoe Corporation of America, and Appellee's name, The Juvenile Shoe Corporation of America." The record clearly establishes, however, that neither one of the respective parties ever uses its corporate name in connection with the sale to the consumer of the merchandise here in issue.

During the pendency of the appeal to this court, and after appellee had filed its brief, appellant moved to strike certain portions thereof on the ground that they contained improper "allegations and vituperative statements challenging the correctness of the record and reflecting both upon counsel [for appellant] and this Court." Appellant's motion to strike was denied on June 28, 1957, with the privilege of renewing the motion at the time of oral argument. This, appellant did. At oral argument counsel for appellee agreed to have the court strike certain sentences from appellee's brief. We have accordingly stricken this matter therefrom. The balance of appellee's arguments as to the propriety of considering the evidence in question should not be stricken, as they represent, in our opinion, legitimate argument on behalf of appellee as to what this court should consider in its review of the case.

Appellee has moved to strike the portions of appellant's brief and the record relating to certain mentioned letters. Inasmuch as we deem it unnecessary to consider this evidence in our determination of the case, we do not pass upon that motion. In view of our conclusion, other matters presented by the parties do not seem to us to require discussion herein.

For the foregoing reasons, the decision of the Assistant Commissioner is *reversed.*

Reversed.

WORLEY, Judge (concurring).

While I readily agree with the result reached by the majority, I strongly disagree as to the propriety, necessity and wisdom of considering the third party registrations cited by appellee.

During the thirty years Congress has charged this court with the responsibility of construing and applying the trademark statutes it enacts, we have, with two possible exceptions, consistently held that, in cancellation and opposition proceedings, marks belonging to those not parties to the proceedings are not to be considered.

One of the early decisions, Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 1070, 18 CCPA 1507, involved an opposition proceeding. This court, after refusing to consider some one hundred third party registrations said:

"We are not unmindful of the fact that, in proceedings in courts of equity relating to unfair competition and trade-mark infringement cases, the courts take cognizance of

the situations created by numerous uses of resembling marks on similar characters of merchandise and, in adjusting the equities, give consideration to such situations. But *registration* is controlled solely by the statute. Section 5 of the trademark registration act of February 20, 1905 (15 U.S.C.A. § 85), provides that marks (Italics quoted.) ' * * * which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered.'

" * * * *One purpose of the Trade-Mark Registration Law* being to aid legitimate interstate and foreign commerce, *it seems to us that, both in letter and spirit, it requires a construction which will, to the fullest extent possible, prevent confusion, not add thereto*. If by inadvertence, or acting under a mistaken construction of the statute, improper registrations have heretofore been granted, such errors are not remedied by supplementing them with still another error, and a mistake of yesterday should not constitute a precedent for the law of to-day and to-morrow." (Italics supplied.)

Congress has been aware of that construction and of this court's adherence to it for many years. Yet, although the trademark statutes have been frequently amended, and in 1946 completely revised by the Lanham Act, Congress has shown no dissatisfaction with that interpretation. Thus it would appear reasonable to assume that our view has been consistent with Congressional intent, and that the doctrine of legislative ratification of judicial decisions, so deeply rooted in our law and previously followed by us, is applicable here.

As a general rule the certainty and stability of the law can best be served by adherence to established precedents unless it be clearly shown that they are wrong, or unless Congress, in its wisdom, sees fit to change the law upon which such precedents rest. Congress has not changed the law, and I would remind my colleagues that this court has always subscribed to the principle that it is incumbent upon one who challenges the correctness of prior decisions to show by clear and convincing evidence where those decisions are wrong. I respectfully suggest there is no such showing here. On the contrary, I think our prior decisions are consistent with Congressional intent; they are sound; they are fair to the litigants and public alike; and, of paramount importance, they have become settled law. Under such circumstances, I find myself in fundamental disagreement with respect to the propriety of the majority action in the wholesale reversal of those precedents.

In my view, the necessity for the length the majority goes is not supported by the facts of record. Under our adversary system of judicial procedure it is reasonable to expect the party urging consideration of third party marks to make a real issue of their criticality to the ultimate issue for decision. The Patent Office, in conformity with our established precedents, excluded consideration of the third party marks cited by appellee. However, in the thirty-two reasons of appeal to this court the only reference to that fact is buried deep in a subparagraph of a subparagraph of one reason of appeal, being (iv) of (*d*) of Reason 3 (R. 232). It would appear that alleged errors seriously relied on would be more strongly urged. The rather casual and perfunctory manner of treating that matter at least suggests the lack of importance with which it is regarded. Certainly counsel advances no grounds to support reversal of our precedents. There is no doubt in my mind but what the majority could quite easily have excluded those marks and still arrive at the same result.

Aside from the above considerations, I have serious doubts as to any real evi-

dentiary value the marks belonging to others might have in determining the rights of those immediately involved in cancellation and opposition proceedings. Consideration of such marks will necessarily involve elements of such a speculative, specious and nebulous nature as to constitute a very real danger that the parties might well receive a lesser, rather than a greater, degree of justice in the task of determining their rights.

Here the majority restricts consideration of third party marks to mere *registration*. However, once the door is open to that extent, will we not also be asked, and with equal logic, to consider and pass on such related issues as actual use and abandonment; unregistered, as well as registered, marks, their use and abandonment; and determine, as well, the respective burdens of proof which will necessarily be involved in such proceedings? Will not the majority view also require consideration of the marks feared in the Trustee decision which, through inadvertence or other mistake, are improperly registered? Those and other uncertainties will naturally flow from the majority's action.

The majority appears to be influenced, unduly, I think, by the fact that other courts considered third party registrations. That is nothing new. It was recognized in the Trustee decision but did not influence the reasoning or result reached there any more than it should here. If there is any serious judicial conflict I think it would be far wiser to allow Congress to reconcile that matter than for us, especially at this late date, to arbitrarily repudiate our own decisions.

I freely confess my own guilt in allowing consideration of third party marks in our original decision, and my chief reason for favoring a reargument was to correct that inadvertence. I think it would be most unfortunate for us to fail to avail ourselves of this opportunity to correct that error rather than compound it by reversing established precedent. While I fully appreciate the laudable objectives of the majority, I am totally unable to join in reversing our precedents on the mere theory they "are not sound" or "too broad." Quite the contrary, I am convinced we are improperly, unnecessarily, and unwisely shattering sound and established precedents, and substituting nothing but new uncertainties which will impose additional burdens and require many years of decisions by the Patent Office and this court before the same degree of justice, certainty and stability now enjoyed can be achieved.