46 CCPA

**NATIONAL MOTOR BEARING CO., Inc., Appellant,**

v.

**JAMES–POND–CLARK, Assignor to Loyola University Foundation, Appellee.**

Patent Appeal No. 6343.

United States Court of Customs and Patent Appeals.

April 28, 1959.

A. Donham Owen, San Francisco, Cal. (James Atkins and Russell L. Law, Washington, D. C., of counsel), for appellant.

Casimir A. Miketta, Los Angeles, Cal. (E. E. Greigg, Washington, D. C., of counsel), for appellee.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH and MARTIN, JJ.

MARTIN, Judge.

This case was originally argued on March 6, 1958, and an opinion was thereafter rendered by the court on May 2, 1958. A petition for rehearing was subsequently filed by the opposer-appellant and the case was reargued on November 10, 1958. Pursuant to such argument and the additional memoranda filed by the parties, the opinion of May 2, 1958 is hereby withdrawn, and the following opinion is substituted therefor:

The appeal was taken in an opposition proceeding from the decision of the Commissioner of Patents, acting through the Assistant Commissioner, 110 USPQ 554, reversing the decision of the Examiner of Interferences sustaining the opposition.

Applicant (the appellee herein) has applied for registration on the principal register of its mark "Circle Seal," accompanied by a pictorial representation (in caricature) of a sea lion or seal with a ring around its neck, for "Check Valves, Relief Valves, Shuttle Valves, Flow Control Valves, Restrictor Valves, Selector Valves," asserting use since December 30, 1947. Registration is opposed by the owner of two registrations, one [1] for a mark consisting of a pictorial representation of a sea lion or seal with a ring balanced on its nose, and the other [2] for the same mark as the first except that the words "National" and "Wherever

Shafts Move" circumscribe the pictorial representation with the "O" of "National" constituting the ring balanced on the seal's nose. Each of opposer's registrations recites use since April 25, 1934, with respect to goods identified as

"* * * Grease and oil retainers of the friction type used to seal the space between a housing and a rotating or reciprocating shaft, or the space between a piston and cylinder wall—namely, retainers made of unitary circular rings of felt, leather, or composition; retainers made of unitary circular rings of felt, leather, or composition, and having a spring fitted thereto; retainers made of unitary circular rings of felt, leather, or composition, having a spring fitted thereto, and the whole held within a cage or shell of ductile steel, brass, or aluminum * * *."

The sole question involved is confusing similarity.

There is no dispute as to the parties' respective dates of first use with regard to the goods specified in the registrations; opposer is clearly the prior user. The parties agree, as well, that their goods are sold to the same class of purchasers and that the goods are "nonconsumer" goods in nature, viz.,—they are sold primarily to manufacturers as distinguished from members of the public-at-large. Opposer admits that the record supports the Assistant Commissioner's finding that the purchasers of the goods are "discriminating" in that they "know what they want and know where to buy it."

The Assistant Commissioner placed some stress on the fact that the purchasers of the parties' products were "discriminating." Adding to this the fact that the record indicated that both parties used word marks in conjunction with the illustrations of sea lions or seals and that their products are ordered by word mark or by company name

---

1. Reg. No. 322,520, issued March 12, 1935, renewed and published in accordance with Sec. 12(c) of the Lanham Act, 15 U.S.C.A. § 1062(c), on Nov. 2, 1948.

2. Reg. No. 322,517, issued March 12, 1935, renewed and published in accordance with Sec. 12(c) of the Lanham Act on October 26, 1948.

("National" and "Circle Seal"), she concluded that there would be no likelihood of confusion from concurrent use of the marks in issue.

Opposer has appealed from this decision, urging primarily that the Assistant Commissioner erred in:

(1) "failing to appreciate that opposer's Registration No. 322,520 * * *, *showing opposer's picture trademark alone,* constitutes a statutory mandate to refuse registration of the alleged mark presented by the applicant"; and

(2) in giving undue weight to the fact that the purchasers of the goods involved are discriminating.

Opposer further urges that its proofs show that it has been continuously manufacturing and selling "O" rings from a time prior to applicant's date of first use and cites applicant's emphasis in its advertising upon a "circle seal principle" of operation inherent in its valves, occasioned by the use therein of "O" rings, as a factor to be considered in the determination of whether the marks are confusingly similar.

Notwithstanding the foregoing arguments, we are of the opinion that the Commissioner's decision must be affirmed.

It is important at the outset to note that there is a definite distinction between the goods of the parties to this proceeding. Applicant's application and proofs restrict the use of its mark to valves of various types. Admittedly, many of these valves have "O" rings incorporated therein and, presumably, the words "Circle Seal" refer to the circle seal operation occasioned by the use of the "O" rings. Opposer attempts to capitalize on this fact in the light of the use of its mark in connection with "O" rings. Opposer's record, however, casts much doubt on the weight to be ascribed to its sale of "O" rings in this case. The record clearly establishes that prior to 1944, when opposer acquired the Arrowhead Rubber Company as a subsidiary, it did not manufacture or sell "O" rings. Subsequent to 1944, it did sell "O" rings

(both through Arrowhead's and its own salesmen), *but not under the marks upon which it relies in this proceeding.* Up until 1952, at the earliest, the "O" rings were sold under the "Arrowhead" name, and neither opposer's corporate name nor its mark appeared either on the "O" ring packaging or the "O" rings themselves. Except for the fact that "O" rings were listed among its products in advertisements bearing opposer's mark and in trade catalogs distributed by opposer which also contained reproductions of its mark, there was no association of the mark with "O" rings prior to applicant's date of first use.

But were we to agree that opposer had established prior use of its mark in connection with "O" rings, we do not feel that it would be in a better position. For a number of reasons, we do not feel that the consumers of the respective products of the parties would be likely to be confused as to the origin of the goods. The most compelling reason is that we are dealing here with marks that are inherently weak. Opposer deals in various types of fluid seals. The use of a trademark consisting of a pictorial representation of an animal whose common name is identical to the name of the product with which it is associated, renders such mark anything but arbitrary. The addition thereto of a ring balanced on the seal's nose, said ring being obviously representative of a grease retainer or the like, does little to strengthen the mark.

Appellee contends that opposer's mark is weak because of certain third party registrations and third party usage of marks similar to opposer's which have been applied to products having the same function as opposer's. This court has found that the registration by others of marks having a similar feature on like products is evidence tending to show suggestiveness of that feature. Shoe Corporation of America v. Juvenile Shoe Corporation of America, 266 F.2d 793, 46 CCPA ——. We are of the opinion that evidence of present third party usage has an even greater tendency to weaken an

opposer's mark since such usage is relevant for the same reasons as third party registrations and also indicates a conditioning of the public mind to the common feature, thereby decreasing any likelihood of confusion.

The degree of significance of the evidence of third party registrations is dependent inter alia upon the similarity of such third party marks and products to opposer's marks and products. It is noted, however, that third party registrations are not evidence of the present usage of the particular marks. Usage must be independently established.

As evidence to support its contention that opposer's mark is weak, appellee has introduced thirty five registrations. Three of these marks display sea lions but are not applied to sealing material or devices, and consequently do not affect opposer's mark at all. Twenty six can be accorded but little weight because they do not display a representation of a sea lion or seal although they do employ the word "seal" and are applied to sealing materials. The remaining six marks evidence a decided weakness in opposer's mark since they not only exhibit pictures of the animal but are employed in connection with sealing materials. These latter registrations afford evidence that the illustration of a sea lion is descriptive or suggestive of sealing materials, rather than an indication of source.

Contrary to appellant's contention, the fact that some of these third party registrations have not been republished under Section 12(c) of the Act of 1946 or have been canceled under Section 8 of the Act, 15 U.S.C.A. § 1058, does not negate their import of establishing some weakness in opposer's mark, because the mere registration of a number of marks containing such pictures indicates that they are not of an arbitrary nature.

In the present instance, some doubt has been cast upon the date and extent of usage of similar marks by third parties as established in this record;

naturally, this factor would lessen the effect of such usage on the strength of opposer's mark. Nevertheless, we feel some weight should be accorded such usage. One advertisement in evidence includes a representation of a sea lion or seal balancing a ring on its nose (apparently an "O" ring) and is entitled "Depend on Darcoid precision seals for guaranteed performance," also, photostatic copies of several pages from the December 1939 edition of "Thomas' Register" have been introduced which show a number of advertisements by the Durametallic Corporation of Kalamazoo, Michigan, of "Dura Seal" and Durametallic Packings together with the pictorial representation of a sea lion or seal wearing a top hat and carrying a cane. These latter advertisements are all for sealing material, and one witness testified that this corporation is continuing to use the words "Dura Seal" together with a picture of a seal.

Under these circumstances, this court cannot give the same degree of protection as would be warranted if a purely arbitrary mark were involved. As was stated in Sure-Fit Products Company v. Saltzson Drapery Company, 254 F.2d 158, 160, 45 CCPA 856:

" * * * It seems both logical and obvious to us that where a party chooses a trademark which is inherently weak, he will not enjoy the wide latitude of protection afforded the owners of strong trademarks. Where a party uses a weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights. The essence of all we have said is that in the former case there is not the possibility of confusion that exists in the latter case."

Using the foregoing as a guide, there is no question in our minds but that the opposition should be dismissed. While both parties employ a representation of a sea lion, the illustrations do not look at all alike. Opposer's sea lion is a relatively accurate reproduction of

**804**

the animal, including whiskers, applicant's seal is a caricature. Opposer's seal balances a ring on its nose; applicant's seal has a ring around its neck. Furthermore, applicant's seal has accompanying it the words "Circle Seal," which further serve to distinguish it from opposer's mark.[3]

In addition to this, we cannot ignore the fact that we are dealing not with the public-at-large but with discriminating purchasers, who would be, generally speaking, less likely to be confused by the concurrent use of the instant marks.

The foregoing considerations, taken together with the distinctions between the products of the parties, lead us to conclude that there would be no likelihood of confusion from concurrent use of the marks in issue.

For the foregoing reasons, the decision of the Commissioner is affirmed.

Affirmed.

WORLEY, Judge (concurring).

I agree with the result reached by the majority, but do so without regard to third party registrations or evidence of their use. My reasons for excluding consideration of marks of those not actual parties to . opposition and cancellation proceedings are set forth in a concurring opinion in Shoe Corporation of America v. Juvenile Shoe Corporation of America, 46 CCPA ——, 266 F.2d 797. There it was suggested that once the door was opened to consideration of third party marks for one purpose, it would become necessary to consider them for many purposes. In that case only registration was considered. Here, however, the new doctrine is expanded to include use as well as registration. What the next step might be is a matter of conjecture.

Consideration of this new element will place additional and unnecessary burdens on the litigants, the Patent Office, and the courts. I am opposed to such a

course primarily because it is a complete reversal of our prior decisions, and also because the real evidentiary worth of third party registrations is, at best, so questionable as to constitute a very real danger to the proper determination of the rights of those immediately involved.

I trust that our experience in the Shoe Corporation case and here will convince us of the desirability of an early return to our established precedents.

words "National" and "Wherever Shafts Move," is certainly no closer to applicant's mark than is the former registration.

---

**3.** We have viewed opposer's case in its best light and have considered only his registration No. 322,520 for the seal and ring without any accompanying words. Registration No. 322,517, including the