46 CCPA

**SUNDURE PAINT CORPORATION,**
Appellant,

v.

**MAAS & WALDSTEIN CO., Appellee.**

Patent Appeal No. 6453.

United States Court of Customs
and Patent Appeals.

June 30, 1959.

Herbert J. Jacobi, New York City, for appellant.

Harry C. Bierman and Jordan B. Bierman, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WARREN E. BURGER.*

MARTIN, Judge.

This is an appeal from the decision of the Commissioner of Patents, acting through the Assistant Commissioner, reversing the decision of the Examiner of Interferences, and sustaining the opposition brought by appellee, Maas & Waldstein Co., to the application for registration of "Plextrum"[1] for an "acrylic masonry coating." Opposer's earlier use and ownership of the trademark "Plextone"[2] for "industrial coating finishes for producing multiple-colored film coatings" are conceded.

The Commissioner found that the products bearing the marks in issue each " * * * fall in the broad category of 'paint products' * * * " and assumed sales thereof to the same ultimate purchasers. The Commissioner then held that "the resemblance between the marks is such that it is believed that a substantial segment of the purchasers of the products is likely to attribute common origin to them" and accordingly sustained the opposition.

Appellant claims that the products identified by the marks in issue are specifically different from one another, are sold to a class of discriminating purchasers, and therefore would not be likely to be confused as to source or origin by such prospective customers. Appellant further contends that "Plex," the asserted dominant feature of opposer's

mark, was appropriated by it prior to the use thereof in "Plextone." Appellant refers to its prior registration of the mark "Plexite," which registration was pleaded in the answer to the present opposition. It therefore concludes that it " * * * should feel free to adopt a mark with the prefix 'Plex' therein, such as the instant mark 'Plextrum' for other products in its line."

Irrespective of the specific differences in composition of applicant's and opposer's goods, we agree with the Assistant Commissioner that they come within the general category of paint products. Also, it is our opinion that both materials are intended to be used as protective and decorative coatings on similar and, in many instances, on identical surfaces.

In so far as the class of purchasers is concerned, there is no indication in appellant's application that it is restricted to any specific channels of trade and, since no other evidence is offered, we must assume that all conventional modes of distribution of its products are contemplated. On the other hand, appellee has introduced testimony which establishes that it not only markets its product through its Industrial Division, which sells "Plextone" directly to manufacturers, for industrial product finishes, and through its Architectural Division, which sells it to authorized distributors who, in turn, sell the material to building and painting contractors, but that appellee has also carried on an extensive educational program by means of "consumer leaflets" and advertisements in magazines, in order to teach the general public to distinguish its goods by the trademark "Plextone." Under these circumstances we can only conclude that the channels of trade through which applicant's and opposer's products move are, or are likely to be the same, and at least overlapping in some categories.

---

* United States Circuit Judge for the United States Court of Appeals for the District of Columbia Circuit, designated to participate in place of Judge O'Connell, pursuant to the provisions of Title 28 United States Code, Section 291(b).

1. Application Serial No. 663,754.

2. Registration No. 547,125.

We do not agree with appellant's contention that there is no likelihood of confusion of prospective purchasers as to origin of the goods of the respective parties because of the allegation that purchasers of paint are discriminating. In some instances in the paint field this theory might be significant but not so here. First, the evidence adduced by appellee discloses a great variety of purchasers having no special technical skill. A painting contractor may be a well established firm or an individual who does odd jobs on days off from his regular occupation. Furthermore, if appellee's general consumer educational program is successful and the ultimate consumer determines that "Plextone" is to be used in his home or business establishment, he would not be classed in the category of a discriminating purchaser.

Appellant's suggestion that his prior registered mark "Plexite" so resembles opposer's "Plextrum" as to weaken or delimit its scope is without merit. The existence of *one* registration having a feature common to that found in opposer's mark, while admissible in evidence, is insufficient to prove that that feature is suggestive of the goods with which the mark is associated. Cf. Shoe Corporation of America v. Juvenile Shoe Corporation of America, 266 F.2d 793, 46 CCPA ——. Furthermore, as pointed out in the tribunals below, the fact that a prefix may be common to other marks in the paint composition field is of no significance if the use of the two marks, when they are viewed in their entireties, as they must be, is likely to cause confusion of source. The marks may not be judicially dissected. May Department Stores Co. v. Kenya Corp., 234 F.2d 870, 43 CCPA 940, and cases there cited.

The ultimate question before us is whether prospective purchasers may mistakenly believe that the two paint products, marketed under the marks "Plextone" and "Plextrum," have the same *source or origin*. We conclude that "Plextrum," when applied to the goods of applicant, so resembles the mark "Plextone," as applied to opposer's prod-ucts, as to stimulate identical psychological reactions and as to be likely to cause confusion or mistake or to deceive purchasers.

For the above reasons we *affirm* the decision of the Commissioner of Patents.

Affirmed.

WORLEY, C. J., did not participate in decision because of illness.