49 CCPA

**AIR PRODUCTS, INC., Appellant,**

v.

**MARQUETTE MANUFACTURING CO., Inc., Appellee.**

**Patent Appeal No. 6735.**

United States Court of Customs and Patent Appeals.

April 11, 1962.

Shanley & O'Neil, Paul T. O'Neil and Robert J. Patch, Washington, D. C., for appellant.

Carlsen & Carlsen, Andrew E. Carlsen, Minneapolis, Minn., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

SMITH, Judge.

The Trademark Trial and Appeal Board (125 USPQ 247) sustained the opposition instituted by appellee as opposer against appellant as applicant to register its mark "REDI-SET" for "cutting and welding outfits." (Application Serial No. 41,427 filed November 27, 1957.) The opposition was predicated on opposer's prior registration No. 612,985 issued September 27, 1955 on its mark "Redi-Arc" for "welding machines," and the alleged likelihood of confusion or mistake or deception of purchasers by reason of applicant's use of its mark on its goods. Applicant alleges first use of its mark on July 25, 1957.

The single issue presented here is whether applicant's mark "REDI-SET" when applied to applicant's goods is likely to cause confusion or mistake or deception of purchasers because of its similarity to opposer's registered mark "Redi-Arc."

While there are technical differences in the specific goods on which the parties use their respective marks, we do not consider these differences to be of significance here. As was stated in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 47 CCPA 782, "Section 2 (d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as a basis for sustaining a trademark opposition * * *."

The issue here must be determined primarily by a comparison of the marks in issue. Considered as wholes, the only similarity in sound and meaning of the marks is in the common use of the prefix "Redi." In appearance they are similar in that both are hyphenated compound words with each suffix comprising a three letter word. While in a proper case the prefix "Redi" might be shown to possess distinctiveness as an indicator of source or origin of the goods to which it is applied, the present record does not afford us sufficient evidence of such distinctiveness. Instead, the prefix "Redi" is here used in both marks for its descriptive connotation.[1] It is similarly shown in the fifteen third party registrations of record[2] for various goods. These registrations are, therefore, some evidence of the lack of distinctiveness per se of the prefix "Redi" and hence of its inability to here function as an indicator of source or origin of the goods. Shoe Corporation of America v. The Juvenile Shoe Corporation of America, 266 F.2d 793, 46 CCPA 868.

A non-distinctive prefix such as "redi" when combined with other words or syllables may acquire with such other words or syllables, sufficient distinctiveness to serve as a trademark indicating the source of origin of the goods on which it is used. However, the words "arc" and "set" which opposer and applicant use respectively with the common prefix "redi" are descriptive of the goods, i. e.,

1. The prefix "Redi" is but a phonetic spelling of the word "Ready" which Webster's New International Dictionary defines as:
   " * * * 2. Fitted, arranged, or placed, for immediate use; * * *.

* * * * *
"7. Offering itself at once; immediately at hand; opportune; available; handy; * * *."

2. The following third party registrations appear in the record:

| REDI HEET | — 218,048 | Redi-flo | — 626,836 | REDI POP | — 649,233 |
|---|---|---|---|---|---|
| REDIFLUXED | — 524,179 | REDI-FLOW | — 627,752 | REDI-FLAME | — 665,527 |
| REDI-FLO | — 600,162 | Redi-Jet | — 628,853 | Redimix | — 668,941 |
| Redi Mixer | — 611,716 | REDI BREEZE | — 636,406 | Redi-Vac | — 671,775 |
| Redi-Baker | — 614,283 | REDI FRY | — 647,037 | REDISOL | — 672,736 |

the arc drawn by opposer's welder and the set of equipment which applicant supplies as its welding apparatus. Such distinctiveness as is here present thus resides only in the combined words as unitary marks which must be compared in their entireties. Shoe Corporation of America v. The Juvenile Shoe Corporation of America, supra; Vita-Var Corporation v. Galvicon Corporation, 284 F. 2d 953, 48 CCPA 771; E. L. Bruce Company v. American Termicide Co., 285 F.2d 462, 48 CCPA 762.

Thus, comparing the entire marks, it is our opinion that they differ so in sound, meaning and appearance that there is no likelihood of confusion, mistake or deception of purchasers arising by reason of the common use of the non-distinctive prefix "redi" which on the present record is shown to be incapable per se of indicating source or origin of the goods on which it is used.

The marks in issue here are similar only insofar as both use the prefix *Redi*. Opposer's record here fails to establish facts to support a finding that such prefix has significance as an indicator of the source or origin of the goods on which it was applied. The term "Redi" as used by opposer and by applicant is used in the same sense as it is used in several of the third party registrations of record as descriptive of the availability of the goods for immediate use. As such it is descriptive of a property of the goods here in issue. The mere fact that opposer had used its mark "Redi-Arc" on its goods prior to applicant's use of its mark "REDI-SET" on its goods is not sufficient to establish that the prefix "Redi" had acquired such trademark significance that opposer was entitled to preclude registration of a mark by another merely because it too used the common descriptive prefix "Redi." We think, therefore, that the Trademark Trial and Appeal Board was in error in finding on the present record that the prefix "Redi," in effect had "trademark significance."

This court in a long line of decisions has refused to accord any great weight to terms such as the prefix "Redi" in determining whether marks are confusingly similar. See: The May Department Stores Co. v. Schloss Bros. & Co., Inc., 234 F.2d 879, 43 CCPA 980, and cases there cited.

Where the only similarity of the marks is found in a common prefix which has been recognized for its descriptive connotation rather than as an indicator of source or origin of the goods on which it is used, it is insufficient for an opposer, as here, to prove merely a prior use thereof. It is essential in such a situation that opposer establish facts from which a determination can be made that such descriptive and common connotations of such prefix are subordinate to its acceptance as an indicator that opposer was the source of the goods on which the mark was applied.

This situation which prevails on the record here is similar to that which prevailed in Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955 (C.C.A. 2), cert. den. 320 U.S. 758, 64 S.Ct. 65, 88 L. Ed. 452, where the court in holding that the mark "Chateau Montay" did not infringe on the mark "Chateau Martin" said at page 959 of 137 F.2d:

> "Here the plaintiff chose to build its business around the use of a name 'Chateau' which was previously in common use in advertising wines. It took the risk that competitors, old and new, would also use that common name. * * * Plaintiff, therefore, could not and did not pre-empt every use of 'Chateau' * * *."

Where, as here, the sole point of similarity of the marks is found in the common portions thereof which are descriptive of the goods or of some property thereof, such common portions, in the absence of evidence to the contrary, must be considered to indicate the *nature* of the goods rather than the *source* of the goods. It is the likelihood of confusion, mistake or deception of purchasers as to the *source* of the goods on which applicant's mark is used which is recognized by the Lanham Act as a basis for refusing regis-

tration under section 2(d). We are unwilling on the present record to predicate such likelihood on the tenuous proposition advanced by opposer that the marks in issue both utilize a term of common descriptive connotation such as "Redi," which has not been shown to have been used in either mark in other than its common descriptive sense.

For the foregoing reasons, the decision of the Trademark Trial and Appeal Board is reversed.

Reversed.

WORLEY, Chief Judge, and MARTIN, Judge, concur in result only.

RICH, Judge (dissenting).

Opposer is the owner and undisputed prior user, by at least three years of the registered trademark "Redi-Arc" for "welding machines."

Appellant sells four types of oxy-acetylene "cutting and welding outfits" under the trademark "REDI-SET." These outfits include, inter alia, oxygen and acetylene regulators, a welding torch or torch handle with mixer, welding tips, goggles, hose, and instruction, information, and repair parts books.

Opposer manufactures and sells both "arc and gas welding equipment including welding machines, welding and cutting outfits, electrodes and welding supplies." Opposer has sold its gas welding and cutting outfits under the trademarks "Aero-Jet," "Star-Jet" and "Super-Jet." Clifford M. Akins, vice president and director of opposer, stated by affidavit that the trademark "Redi-Arc" has been used on "arc welding machines and torches" and that the mark "Redi-Fast" is being used by his company for battery chargers. The Notice of Opposition also asserts a possible future use by opposer of " 'Redi-Jet', as a trademark on welding and cutting outfits, as it expands its line of this type of welding equipment."

In answering opposer's interrogatories, appellant admitted that some welding operations can be satisfactorily performed through the use of either arc welding equipment or gas welding equipment. While not admitting that it is common in the trade for electrical welding machines and gas torches and welding and cutting outfits to be marketed through the same or partially the same channels, appellant did note that a "publication of the National Welding Supply Association * * * [discloses that] * * * 393 of 408 distributors [over 96%] of welding equipment who are members of the association handle electric and gas welding equipment."

The sole issue is whether appellant's "REDI-SET," *as a whole, so* resembles opposer's registered mark "Redi-Arc" as to be *likely,* when applied to appellant's goods, to cause confusion or mistake or to deceive purchasers.

In its decision sustaining the instant opposition, the board said:

"The term 'REDI' although suggesting that the products to which it is applied are available for instant use is not without trademark significance. Considering, therefore, that the marks 'REDI-SET' and 'REDI-ARC' are both composed of the term 'REDI' followed by the merely descriptive word 'SET' and 'ARC', it is concluded that the similarities between these marks are such that confusion, mistake or deception of purchasers is reasonably likely to occur."

Considering the undisputed prior use of "Redi-Arc" by opposer, opposer's manufacture and sale of both electric arc welders and gas welding outfits and the similar practices of others in the trade, I have no doubt that at least some people already familiar with the "Redi-Arc" line, upon seeing gas welding outfits for sale under the "REDI-SET" mark, are likely to conclude that there is a common source. They do not have to know *what* the source is. It is enough that they imagine it is the same source.

It is common for concerns to have a family of products with similar marks on them. Obviously the suffix "Arc" could not be used on a gas welding outfit and it

would seem normal to use the prefix "Redi-" with an appropriate suffix such as "Set." The similarities between the two marks, considered as a whole, are too obvious for discussion. The majority opinion concedes similarity in appearance, that both are hyphenated, and both have identical prefixes and three-letter suffixes. The differences are not such as to make confusion unlikely. Neither are the differences in the goods. I cannot understand how it can be said that "the only similarity of the marks is found in a common prefix."

Appellant strenuously argues that "Redi-" is descriptive and that "Arc" and "Set" are too, hence that opposer's entire mark is descriptive, weak, and entitled to little protection. Not only are these arguments inconsistent with appellant's strenuous efforts to register "REDI-SET," but clearly "Redi-" is not descriptive, merely suggestive. "Redi-Arc," being registered on the Principle Register, is presumably a good trademark, not descriptive, and it sufficiently resembles "REDI-SET," in my judgment, to prevent registration of the latter on such closely similar goods under the conditions prevailing in this trade.

As to the third-party registrations, in the Shoe Corporation case, cited by the majority, the word "Lazy" was discounted as an origin indicator in marks for shoes in view of its incorporation as the first word in five other registrations of marks for shoes. Of the 15 third-party registrations in footnote 2 of the majority opinion there is but one (524,179) remotely related to this case. It is for welding rods and is not a hyphenated mark. The others truly are for "various goods" ranging from corn poppers and frying griddles to vacuum cleaners and oil burners. I think that notwithstanding such uses—even assuming the marks are in use so as to condition the public mind, an assumption supported by no proof whatever—"REDI-" plus a three-letter suffix may have very great origin-indicating ability and significance in the welding field. I think citation to a dictionary showing that "ready" is a word of the English language and stating what it means would have more relevance here than the third-party registrations.

It seems to me apropos to quote here a paragraph from a very recent board opinion, Union Carbide Corp. v. Midwest Mower Corp., 132 USPQ 689 (1962), involving another "ready" mark, to wit, "EVEREADY." The applicant, seeking to register "EVER-READY," put over 100 third-party registrations into the record. Applying views previously expressed by this court, the board said (132 USPQ at 691):

"It has been argued that 'EVER-READY' is a weak mark. The term 'EVEREADY' or 'EVER-READY' does have a definite suggestive meaning and the record discloses innumerable registrations thereof for a wide variety of goods. If a trademark, however weak, is to retain any validity, its owner must be protected where the circumstances are such that a substantial likelihood of confusion would result by the use of identical marks. See: King-Kup Candies, Inc. v. King Candy Company, [288 F.2d 944, 48 CCPA 948]." I would affirm.