49 CCPA

Application of **HELENE CURTIS IN-DUSTRIES, INC.**

**Patent Appeal No. 6795.**

United States Court of Customs and Patent Appeals.

Aug. 15, 1962.

Lewis D. Konigsford, Chicago, Ill. (Max Wall, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

Appellant's application, Ser. No. 43,669, filed January 9, 1958, claiming first use in January, 1957, is to register on the Principal Register the words "BEAUTY NET," without regard to

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

form, simply as a word mark. The description of the goods in the application as filed was "hair spray set." As it stands before us, however, the description has been amended to "hair spray." The specimen shows it is a pressure spray preparation which "Keeps hair in place all day. Controls wispy ends. Maintains any type coiffure."

The application stands rejected, ex parte, on Principal Register Reg. No. 657,255, registered January 14, 1958, on an application filed prior to appellant's filing date, on September 14, 1956, of "BEAUTY SET" for "hair conditioning creme and hair color rinse."

The examiner said of these marks:

" * * * 'Beauty Set' and 'beauty net' [this is the lower case form of the specimen but not of the application] are strikingly similar in both sound and appearance and both are used on commonplace hair preparations. Under such circumstances it is believed that *confusion in trade is likely.*" [Emphasis ours.]

The Patent Office Trademark Trial and Appeal Board, in affirming, said:

" * * * the marks 'BEAUTY NET' and 'BEAUTY SET', when viewed in their entireties, are so similar in sound and appearance that purchaser confusion is *more than likely* to result." [Emphasis ours.]

The prior registrant, whose right it is an object of section 2(d) of the Lanham Act (15 U.S.C.A. § 1052(d)) to protect, is, under section 7(b), the prima facie owner of a valid registration, and prima facie the owner of the mark "BEAUTY SET" and entitled to the *exclusive* right to use it in connection with the goods named in the registration. That exclusive right would, in our opinion, encompass the right to exclude others from using almost indistinguishable, almost identical marks on the same class of goods, viz., hair preparations, especially hair preparations having the general purpose of "setting." Applicant

said in its application its product is a "set." Registrant's mark includes the word "SET."

Appellant argues that the goods are different. Granting the instant application, however, would give *to the applicant* the benefits of section 7(b) with respect to the goods named in its application so that the prior registrant would be deprived of the right to extend the use of the mark "BEAUTY SET," of which it is the prima facie owner, to hair spray used for keeping the hair in place, a natural extension of such a cosmetic business as it is presumably already engaged in, if, indeed, it could be called an extension at all.

Appellant argues that the word "set" in the reference is used in the sense of a set of cosmetic goods, rather than in the sense of setting the hair. There is no evidence to support this mere speculation and we think it is a highly improbable meaning. Appellant has put in the record many third-party registrations, eight of which, beside the reference, are of marks ending in or including "set" and all are used on goods for setting the hair. We think the reference mark carries the same suggestion or meaning, whether or not its owner so intended, a point on which there is no evidence.

Considering the marks themselves, which appellant insists are different in sound, appearance, and meaning, we note that the entire difference resides in one letter out of nine, the two principal words being the same and the last words, containing the one-letter difference, having great phonetic similarity. We find no real difference in meaning, as "SET" and "NET" are here used, for the spray "net" keeps the hair in place and presumably that is just what a hair "set," such as BEAUTY SET, does. The nine third-party registrations of marks which include or end with the word "net" which appellant has introduced, all of which are for hair sprays or dressings, do nothing to dispel this view. We take

judicial notice of the fact that hair nets have long been used by women to keep their hair in place and this record makes it abundantly clear that in the past decade hair sprays having the same purpose, including appellant's own product sold under the registered mark "Spray Net," have been put out under marks using the word "net" in similar fashion. This evidence does not support the appellant's argument that " 'Net' and 'Set' are common, ordinary words, whose meaning is recognized as different by the public," at least not in this corner of the cosmetic field.

While asking us to approve the registration of its mark "BEAUTY NET" as a good trademark, appellant would also like to have us ignore the word "Beauty," which is the prominent part of it, because it "is understood as primarily describing or suggesting a hoped for effect of the goods," and focus our attention on the words "Net" and "Set," which are different. We might as well be asked to ignore the last-mentioned words for the same reason. Obviously all three words are common words and common components of trademarks for cosmetics but the only thing that matters on the likelihood of confusion issue before us is the marks as a whole and the effect they would have if simultaneously used in the marketplace on the goods named in the application and in the reference registration, respectively.

██ It is also suggested that the reasoning of this court in Shoe Corp. of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 46 C.C.P.A. 868, has some bearing here. We there found no likelihood of confusion as between "Lazy Pals" and "Lazy Bones" on shoes. The rationalization of the issues in non-parallel trademark situations is of very little value as precedent. If the marks there had been "Lazy Pals" and "Lazy Gals" we would have had a situation more like the one here and the result might very well have been different. It was in that case that we made it clear that third-party registrations were of some evidentiary value and would be considered for what they are worth. Perhaps the present case will serve to illustrate that, as evidence, they do not necessarily serve only to support the arguments of the party introducing them. Nor does it help an applicant on a section 2(d) likelihood of confusion issue to create a picture of already existing likelihood of confusion as between other marks by introducing a plethora of registrations of similar marks. We will not assume any knowledge on the part of the purchasing public of mere registrations in the Patent Office and neither will we assume that marks are in continuing use, so as to have had any effect on the mind of the purchasing public, merely because they have been registered. As the statute requires us to do, we will determine the issue on the basis of the mark sought to be registered, the goods named in the application, and the prior mark and the goods on which it is used or for which it is registered.

The board's opinion refers to more than forty third-party registrations relied on by appellant in the Patent Office. The record here contains only twenty-seven, not counting the reference. As we have mentioned, some of these are to show marks containing "Set" or "Net." Appellant's main purpose, however, seems to have been to show that "Beauty" is so commonly used in trademarks in the relevant field as to be of no significance. Looking at the record we note that only 6 "Beauty" mark registrations are for hair preparations and four of these were filed, issued, and claim first use *later* than the corresponding dates of the reference and should, therefore, have no effect on the rights of the owner of the reference registration whose interests we are protecting in enforcing section 2(d). The other two registrations are No. 609,275 for BEAUTY-TINT, for rouge, skin cream, hair dyes, and hair tints, and No. 623,683 for BEAUTY BREAK for shampoo. There is nothing of record as to their actual use nor is it

shown that the registrations are still in force. We do not see that the existence of these registrations has any bearing on the likelihood of confusion found below.

The decision of the board is affirmed.

Affirmed.

MARTIN, Judge, concurs in result only.

WORLEY, Chief Judge (dissenting).

That this appeal is controlled by the provisions of Section 2(d) of the Lanham Act there can be no question. Aside from reservations that the majority opinion seems to give undue weight to other considerations, I think the record fairly supports the conclusion that concurrent registration can properly be granted under Section 2(d).

First, although the application is for "BEAUTY NET," the specimen shows that it is actually used in conjunction with applicant's house mark "Sue Cory." Under such circumstances it would seem that "Sue Cory," rather than the somewhat laudatory and suggestive term "BEAUTY NET," would be considered the source of the goods.

Second, applicant states that the goods of both parties are sold to "professional beauticians" for use in their own business. Opposer does not challenge that statement and I see no reason to question its truth. Assuming its correctness, I have no doubt such purchasers would be so "wary and discriminating" as to preclude any likelihood of confusion.

I attach little significance to the fact that both marks contain the same number of letters. So, for that matter, do "right" and "wrong." It also seems that there is as much difference in sound, spelling, appearance, and meaning between "set" and "net" as would be the case in "nit" and "wit."

To repeat, I think the record fairly supports the conclusion that applicant has satisfactorily established its right to register under Section 2(d). I, therefore, would reverse.