MERCOID CORPORATION, Appellant,

v.

AIRBORNE INSTRUMENTS LABORATORY, INC. (Cutler-Hammer, Inc., Assignee, Substituted), Appellee.

Patent Appeal No. 6621.

United States Court of Customs and Patent Appeals.

Feb. 21, 1961.

Byron, Hume, Groen & Clement, Gerritt P. Groen, Chicago, Ill., for appellant.

Pennie, Edmonds, Morton, Barrows & Taylor, Clarence M. Fisher, Washington, D. C. (Harold A. Traver, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Appellee-applicant applied to register, on the Principal Register, the mark MICROtrol for "electrical gauging and control apparatus for machine tools."[1] The application alleges first use of the mark in October 1955.

Appellant-opposer opposed the registration on the grounds of likelihood of purchaser confusion or deception as to the source or origin of the goods, citing its three registered marks: (1) MERCOID [2] for "Limiting, signalling and

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 14,040 filed August 16, 1956.

2. No. 156,669 registered July 11, 1922 and renewed, for "pressure, vacuum, thermostatic, and temperature circuit-controlling

safety devices—namely, light actuated flame detectors and mercury contact devices, temperature actuated flame detectors, barometrically operated devices, thermocouple operated devices, timing devices, differential pressure and temperature devices, vacuum actuated controlling and indicating devices and float actuated controlling and indicating devices;"[3] (2) MERCOID CONTROL appearing in a globe design with the phrase "used the world over" thereon "for electric controls for electric switches, temperature-operated electric switches, pressure operated electric switches, and parts thereof;"[4] and (3) MERCONTROL for "Controlling devices, employing electric circuit controlling switches—namely, vacuum operated electric switches, pressure operated electric switches, float operated electric switches, mechanically operated electric switches and magnetically operated electric switches, and parts thereof including mercury switches."[5]

Opposer, relying mainly upon its marks MERCOID CONTROL and MERCONTROL, appeals from the decision of the Trademark Trial and Appeal Board (122 USPQ 329), which dismissed the opposition after finding that the potential purchasers of the goods of the parties would be "likely to be conscious of the identity of the manufacturer."

The sole question before us is whether applicant's mark so resembles opposer's marks as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers. Section 2(d) of Trademark Act of 1946, 15 U.S.C. § 1052(d), 15 U.S.C.A. § 1052(d).

The products upon which opposer and applicant use their respective marks are different. Applicant's mark is used on electronic apparatus for gauging and controlling the operation of machine tools. The apparatus is used on a single machine tool, and it consists of individual components all or part of which may be purchased and used, depending upon the degree of automation, and the extent of investment desired. Thus a purchaser may wish to buy only gauging apparatus to guide the manual operation of the machine tool, or he may wish to purchase control apparatus which is actuated by the gauging apparatus to provide a completely automatic operation of the machine tool.

The nature of applicant's products is such that they are sold according to the needs and specifications of each individual purchaser. The purchasers of applicant's apparatus generally are technically skilled, at least in the operation of machine tools. While the cost of these products varies according to the complexity of the system involved, the price may be as much as several thousand dollars.

Opposer's products are, primarily, mercury switches, which vary in construction, to be actuated by a variety of means including temperature, pressure, light, magnetic force, fluid level and the like. The evidence indicates that opposer now has about twenty-five basic lines of controls, of which there are thousands of variations. These controls and switches are ordered by specification and vary in price which sometimes is as high as several hundred dollars. Although opposer's advertising indicates that all of its products contain mercury switches, the description of the goods in the registrations are not so limited.

The goods to which applicant's and opposer's marks are to be applied, as exemplified by the evidence of present use, represent two specialized lines of equipment. Applicant's product is electrically operated apparatus designed specifically to measure or guide, or both, the operation of a machine tool. Op-

devices and switches and pressure-controlling switches and mercury tubes."

**3.** Reg. No. 614,800, October 25, 1955.

**4.** Registered Oct. 28, 1930, Trade-Mark 276,768 renewed for 20 years from October 28, 1950.

**5.** Registered Apr. 8, 1952, Registration No. 557,178. First use on July 1, 1949.

poser's products are highly specialized industrial switches designed to be actuated in various ways.

■ However, while acknowledging the differences between the products, it seems clear that the goods are of such a nature that it would not be unreasonable to suppose that one manufacturer would have produced all of them. That being the case, the differences between the goods of the parties are not of determinative legal significance so far as the present issue is concerned.

■ While the parties do not sell their goods to the same customers in all cases, their markets overlap to a significant degree. Therefore, for the purposes of determining the issues here presented, we shall consider it on the presumption that there will be common purchasers of MERCONTROLS and MICROtrols. Such purchasers are likely to be engineers or skilled artisans who in the purchase of the products will order the particular product required to meet precise specifications required by the particular use to which the device is to be put. Frequently considerable expense will be involved in the purchase. We find, therefore, that the purchasers of applicant's and opposer's products will be discriminating purchasers. National Motor Bearing Co., Inc. v. James-Pond-Clark, 266 F.2d 799, 46 CCPA 877, 882.

What, then, is likely to be the response of such purchasers to the marks here in issue? Applicant's mark is the obvious combination of the word "micro" with the last syllable of "control." Thus, it describes the hoped-for operation of applicant's product. While we follow the rule that trademarks should not be dissected, but should be dealt with as a whole, that doctrine does not blind the court to those parts of the whole which will be immediately recognized by every English-speaking person in the market place. Sealy, Inc. v. Simmons Co., 265 F. 2d 934, 46 CCPA 857, 862. The word "micro" though derived from the Greek and once used chiefly by scientists, has almost become a household word in our age of precision technology to indicate small measurements. The suffix "trol" is the same as the suffix of the descriptive word "control." We think, therefore, the word MICROtrol, would suggest to a machinist, or to an engineer working in these areas, the meaning of a control operated to "micro" tolerances.

Opposer relies upon three marks, the first of which is MERCOID. This mark consists of the prefix MERC as in mercury, and the suffix "OID" meaning "like" or "related to." As applied to opposer's goods, the mark MERCOID is but slightly suggestive. The second of opposer's marks is MERCOID CONTROL in the globe design, and the third is the obvious contraction of the second, namely: MERCONTROL. In these cases, the prefix "merc" in each instance appears to have its origin in the mercury switches which opposer features in its advertising as a part of its controls. It seems to us likely, therefore, that the purchaser will associate the prefix of opposer's marks with the word mercury and that as such it is a distinctive association quite different from the likely association with the prefix "micro" of applicant's mark.

As between MERCOID and MICROtrol, there is no similarity. They neither look alike, sound alike nor evoke similar mental associations. The same is true of the MERCOID CONTROL mark and MICROtrol. There remains MERCONTROL which bears a closer visual and auricular similarity to MICROtrol. However, for the reasons previously set out in detail we do not believe that it is likely the potential purchasers of the products of these parties will be confused as to the origin of those products by such tenuous similarities between marks, which are so obviously different.

We therefore affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.